## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| *Plaintiff(s)*<br>AL UMMAH COMMUNITY CENTER, AKA, AUCC FAMILY, EDUCATION AND FAITH CENTER, a New Jersey Non-Profit Corporation, RAY OF SUNSHINE FOUNDATION INC., a New Jersey Non-Profit Corporation<br><br>vs.<br><br>*Defendant(s)*<br>TEANECK, TEANECK ZONING BOARD OF ADJUSTMENT, and its Members, HARVEY ROSEN, DANIEL WETRIN, MONICA HONIS, JENNIFER PRINCE, JERRY L. BARTA, EDWARD MULLIGAN, ATIF REHMAN, MARK MERMELSTEIN, ZEV GREEN, JAMES BROWN, in their individual and official capacities, DAN MELFI, ADAM MYSZKA, individually and in his official capacity, and JOHN AND JANE DOES 1-20, in their individual and official capacities | *Document Filed Electronically*<br><br>Honorable Kevin McNulty, U.S.D.J.<br><br>CIVIL ACTION NO. 2:20-cv-14181 (KM/ESK)<br><br><br>**Oral Argument Requested**<br><br><br>**Return Date: June 6, 2022** |

---

**DEFENDANTS TOWNSHIP OF TEANECK, DAN MELFI, AND ADAM MYSKA'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

---

**HANRAHAN PACK, LLC**
**THOMAS B. HANRAHAN, ESQ.**
80 Grand Avenue, Suite No. 2
River Edge, New Jersey 07661
(201) 525-1011
thanrahan@hanrahanpacklaw.com
*Attorneys for Defendants Township of*
  *Teaneck, Dan Melfi, and Adam Myszka*

**OF COUNSEL & ON THE BRIEF:**
THOMAS B. HANRAHAN, ESQ. –
017281979

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ..............................................................iv

**PRELIMINARY STATEMENT** ..................................................... 1

**STATEMENT OF FACTS** ............................................................. 4

   *A. The Parties* ............................................................................... 4

   *B. The Zoning Permit, Temporary Certificate of Occupancy, and the Neighbors'*
     *Litigation* ................................................................................ 4

   *C. The Site Plan Application and Hearings before the Zoning Board* ........ 6

   *D. Procedural History* .................................................................... 9

**ARGUMENT** ............................................................................ 11

   **I.     STANDARD OF REVIEW** ................................................ 11

       *A. Fed. R. Civ. P. 12(b)(1) and 12(b)(6)* ..................................... 11

       *B. Documents Outside the Pleadings* ......................................... 12

   **II.   THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS
       BECAUSE PLAINTIFFS FAILED TO PROVIDE THE ZONING
       BOARD WITH A MEANINGFUL OPPORTUNITY TO ARRIVE AT A
       DEFINITIVE FINAL DECISION WITH RESPECT TO PLAINTIFFS'
       SITE PLAN APPLICATION** ............................................. 14

   **III.  PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE
       SUFFICIENT FACTS AGAINST THE TOWNSHIP AND MELFI AND
       MYSZKA TO SURVIVE A RULE 12(B)(6) MOTION TO DISMISS
       PURSUANT TO <u>TWOMBLY</u> AS TO COUNTS I, II, III, VII, VIII, XI,
       AND XII.** ........................................................................ 17

       *A. Plaintiffs' RLUIPA claims as pleaded in Counts I, II, and III fail because
         the Amended Complaint pleads no facts indicating a substantial burden on
         religious exercise, or that Plaintiffs are religious institutions
         or assemblies.* ...................................................................... 18

       *B. Plaintiffs' claims pursuant to the New Jersey Municipal Land Use Law
         should be dismissed due to a lack of subject matter jurisdiction, and
         because Plaintiffs failed to exhaust administrative remedies.* ................ 23*

*C. Plaintiffs' Aiding and Abetting claims should be dismissed with prejudice because Plaintiffs have not complied with the New Jersey Tort Claims Act.* ..............................................................................................**25**

**IV. PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST THE TOWNSHIP OF TEANECK SINCE PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS ASSERTING MUNICIPAL LIABILITY AGAINST THE TOWNSHIP PURSUANT TO <u>MONELL</u>, AND SINCE PLAINTIFF CANNOT ALLEGE VICARIOUS LIABILITY AGAINST THE TOWNSHIP FOR THE ACTS OF THE OTHER DEFENDANTS** ...............................................**26**

**V. PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED IN FAVOR OF DEFENDANTS MELFI AND MYSZKA AS ZONING OFFICERS SINCE PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS DEMONSTRATING ANY INDIVIDUAL OR OFFICIAL CAPACITY LIABILITY UNDER ANY PLEADED CAUSE OF ACTION AGAINST DEFENDANTS MELFI AND MYSZKA** ...............................................................................................**32**

**VI. NEW COUNT XIV OF PLAINTIFFS' AMENDED COMPLAINT SHOULD ALSO BE DISMISSED IN FAVOR OF THE TOWNSHIP DEFENDANTS BECAUSE DEFENDANT TEANECK'S ADOPTION OF ORDINANCE NO. 6993 IS PROTECTED BY ABOSLUTE LEGISLATIVE IMMUNITY, AND SINCE DEFENDANTS MELFI AND MYSZKA ARE PROTECTED BY QUALIFIED IMMUNITY** ................**36**

**CONCLUSION** ...............................................................................................................**40**

## TABLE OF AUTHORITIES

*8 Erie, LLC v. City of Jersey City*,
  Civil Action No. 19-cv-9351, 2020 WL 689147 at *3 (D.N.J. May 21, 2020) ............... 35

*Albanian Associated Fund v. Twp. of Wayne*,
  06-Cv-3217, 2007 WL 2904194, *9 (D.N.J. Oct. 1, 2007).................................................. 20

*Aldrich v. Schwartz*, 259 *N.J. Super*. 300, 308 (N.J. App. Div. 1992) .................................... 5

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)............ 39

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).............................................................................. 12

*Baldeo v. City of Paterson*,
  Civil Action No. 18-cv-5359, 2019 WL 277600 (D.N.J. Jan. 18, 2019) ........................... 25

*Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) ....................................................... 12

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*,
  520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ............................................ 29

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................. 2, 12, 17, 36

*Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) ...........37, 38

*Brown v. City of Pittsburg*, 586 F.3d 263, 292 (3d Cir. 2009) ............................................... 29

*Brunetti v. Borough of New Milford*, 68 N.J. 576, 588 (1975)............................................... 24

*Burke v. Deiner,* 97 N.J. 415, 470-72 (1984) ......................................................................... 36

*Congregation Anshei Roosevelt v. Planning and Zoning Bd. Of Borough of Roosevelt*,
  338 Fed. Appx. 214, 217 & fn. 4 (3d Cir. 2009) ...........................................................16, 19

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)................................................................................. 36

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016)........................................ 12

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) .......29, 31

*Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) ................................. 11

*County Concrete v. Roxbury*, 442 F.3d 158, 163-64 (3d Cir. 2006) ................................... 17

*Employment Division v. Smith*, 494 U.S. 872, 878 (1990) ...................................... 20

*Epona v. Cty. of Ventura*, 876 F.3d 1214, 1218 (9th Cir. 2017) ................................... 23

*Estate of Bard v. City of Vineland*,
  No. 17-1452, 2017 WL 4697064 at *3 (D.N.J. Oct. 19, 2017) ........................... 31

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) .......................................... 34

*Falat v. County of Hunterdon*,
  Civil Action No. 12-cv-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) ............ 35

*Fallon v. Mercy Catholic Med. Ctr. of SE Pennsylvania*,
  877 F.3d 487, 493 (3d Cir. 2017) ..................................................... 13

*Grandizio v. Smith*, No. 14-3868, 2015 WL 58403, at *6 (D.N.J. Jan. 5, 2015) ................. 31

*Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 772 (3d Cir. 2013).................... 13

*Harlow v. Fitzgerald*,
  457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) .................................38, 39

*Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ................................... 11

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) .................. 13

*In re Sagent Tech, Inc.*, 278 F.Supp.2d 1079, 1094 (N.O.Cal. 2003) .................................... 35

*ISP Envtl. Servs., Inc. v. City of Linden*,
  Civ. No. 05-4249, 2007 WL 1302995, at *7 n.1 (D.N.J. May 3, 2007) ........................... 15

*James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020)................................. 39

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) .................. 11

*Khodara Envtl., Inc. v. Blakey,* 376 F.3d 187, 196 (3d Cir.2004) ......................... 15

*Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1880) .......................................... 38

*Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d. Cir. 2003) .................................... 17

*Larsen v. Senate of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998) ................................................37, 38

*Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*,
    510 F.3d 253, 270 (3d Cir. 2007) ........................................................................................21

*L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016). ................................................ 39

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ....................................................... 15

*McTernan v. City of York*, 564 F.3d 636, 658-59 (3rd Cir. 2009) ........................................... 31

*Monell v. Department of Social Services of the City of New York*,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ..........................26, 27, 28, 29, 30, 31

*Moore-King v. County of Chesterfield, Va.*,
    819 F.Supp.2d 604, 623-24 (E.D.Va. 2011), *aff'd* 708 F.3d 560 (4th Cir. 2018) ............. 23

*Moriarty v. DiBuonaventura*,
    No. 14-2492, 2014 WL 3778728, at *9 (D.N.J. July 31, 2014) ........................................... 31

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) ...................... 16

*Naylor v. Harkins,* 11 N.J. 435, 444–45 (1953) ........................................................................ 25

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) ...................................................................... 15

*Peachlum v. City of York,* 333 F.3d 429, 433 (3rd Cir. 2003) .................................................. 15

*Phillip v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ........................................... 11

*Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004) .................................... 25

*Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*,
    449 F. Supp. 3d 449, 459 (D.N.J. 2020) ............................................................................... 13

*Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 388 (3d Cir. 2002) ......................... 12

*Ryan v. Burlington Cnty., N.J.* 889 F.2d 1286, 1290–91 (3d Cir. 1989). .............................. 38

*Schweizer v. Middle Twp. Mayor and Governing Body*,
   No. 17-960, 2018 WL 2002792, at *4 (D.N.J. Apr. 30, 2018) ........................................... 30

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Ground Ltd.*,
   181 F.3d 410, 427 n.7 (3d Cir. 1999) ................................................................................. 13

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*,
   387 N.J. Super. 469, 480 (App. Div. 2006) ........................................................................ 25

*T&M Homes v. Twsp. Of Mansfield*, 162 N.J. Super. 497, 512-18 (Law Div. 1978) ......... 36

*Taylor Inv., Ltd. V. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993) .......................... 16, 17

*Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) .................. 37

*Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) ..................................... 28

*Timber Homes Properties, Inc. v. Chester Tp.*,
   205 N.J. Super. 273, 285-89 (Law Div. 1984) .................................................................... 36

*Washington v. Klem*, 497 F.3d 272 (3d Cir. 2007) ............................................................... 20

*Westchester Day Sch. v. Vill. of Mamaroneck*, 386 F.3d 183, 190 (2d Cir. 2004) .............. 19

*Williamson County Regional Planning Comm. V. Hamilton Bank*,
   473 U.S. 172 (1985) ..................................................................................... 2, 15, 16, 17

*Wright v. City of Phila.*, 685 F. App'x 142, 146 (3rd Cir. 2017) ......................................... 29

*Youngblood v. Deweese*, 352 F.3d 836 (3d Cir. 2003) ......................................................... 38

*Zampetis v. City of Atlantic City*,
   No. 15-1231, 2016 WL 5417195, at *6 (D.N.J. Sept. 28, 2016) ....................................... 31

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. C. P. 8(a)(2) ...................................................................... 36

Fed. R. C. P. 12(b)(1) ............................................................ 1, 11, 15, 25

Fed. R. C. P. 12(b)(6). ................................................. 1, 11, 12, 13, 15, 17, 25

## FEDERAL STATUTES

28 U.S.C. §1367(a) ......................................................................... 23

42 U.S.C. §1983 ............................................................... 29, 30, 31, 37

42 U.S.C. §2000cc(b)(1) ................................................................... 21

42 U.S.C. §2000cc(b)(3) ................................................................... 21

## FEDERAL CODE

Internal Revenue Code Section 501(c)(3) .................................................. 4

## NEW JERSEY STATUTES ANNOTATED

N.J.S.A. 40:55D-10.4 ....................................................................... 8

N.J.S.A. 40:55D-53.2a ...................................................................... 8

N.J.S.A. 40:55D-53.2(c) .................................................................... 8

N.J.S.A. 59:1-1, *et seq*. ................................................................ 25

## NEW JERSEY COURT RULES

R. 4:69 ................................................................................... 24

Rule 4:69-1 .............................................................................. 24

Rule 4:69-5 .............................................................................. 24

Rule 4:69-7 .............................................................................. 24

Defendants the Township of Teaneck, its Zoning Officer Dan Melfi, and its Assistant Zoning Officer Adam Myszka ("the Township Defendants") submit this Brief in support of their Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 83][1], pursuant to Fed. R. C. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs Al Ummah Community Center ("AUCC") and the Ray of Sunshine Foundation, Inc. ("the RSFI) (or together as "Plaintiffs") assert various claims of religious or other discrimination pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), the New Jersey Law Against Discrimination ("the NJLAD"), the New Jersey Civil Rights Act ("the NJCRA"), the United States and New Jersey Constitutions, and injunctive claims pursuant to the New Jersey Municipal Land Use Law ("the NJMLUL"), and common law claims for Aiding and Abetting and Conspiracy. These claims are neither true nor are many of these claims ripe for adjudication. Since Plaintiffs are not religious institutions or assemblies, and since Plaintiffs never sought approval from the Zoning Board of Adjustment ("the Board") for a house of worship (despite the fact that the Property was previously approved for religious use), this Amended Complaint should be dismissed in favor of the Township Defendants.

---

[1] For the Court's convenience, the Township Defendants will adopt the same Exhibits as the Board of Adjustment and the Board Members, and use the same Exhibit references.

The Township Defendants assert that the RLUIPA claims (Counts I, II and III) and the civil rights claims made pursuant to the NJLAD, the NJCRA, and the United States and New Jersey Constitutions (Counts IV, V, VI, VII, VIII, IX, and X) should also be dismissed in favor of these Defendants since the District Court lacks subject matter jurisdiction over this dispute – because Plaintiffs' claims against all Defendants are unripe under the Finality Rule and pursuant to *Williamson County Regional Planning Comm. V. Hamilton Bank*, 473 *U.S*. 172 (1985), which Decision holds that as a prerequisite to filing such claims the Board must first be given a meaningful opportunity to arrive at a definitive final decision regarding Plaintiffs' Site Plan Application or permit requests.

Moreover, Counts I through XII should also be dismissed because said Counts lack a sufficient basis to survive a Motion to Dismiss pursuant to *Bell Atlantic Corp. v. Twombly*, 550 *U.S*. 544 (2007). Plaintiffs' RLUIPA claims – Counts I, II and III – should also be dismissed since Plaintiffs' Amended Complaint fails to plead facts demonstrating that Plaintiffs' religious exercise was ever burdened, or that Plaintiffs are in fact religious assemblies or institutions, since a fair review of the Amended Complaint and the Board's Hearing Record proves otherwise. Counts IV (NJLAD) and V (NJCRA) should also be dismissed due to the lack of finality, and pursuant to *Twombly* as not sufficiently pleaded. Counts VI (US Constitution, Due Process), IX (US Constitution, Equal Protection), and X (NJ Constitution, Equal Protection) should also be dismissed due to the lack of finality, and pursuant to *Twombly*. Counts VII and VIII, Plaintiffs' state and federal Free Exercise claims,

should also be dismissed due to a lack of sufficient facts demonstrating that Plaintiffs' free exercise rights were violated by the Township Defendants. Counts XI and XII (New Jersey's Municipal Land Use Law) should also be dismissed since Plaintiffs failed to exhaust their administrative remedies under the NJMLUL, and since this District Court lacks subject matter jurisdiction over claims made pursuant to the NJMLUL. Count XIII (Aiding and Abetting), to the extent that it is common law claim, is barred by Plaintiffs' failure to comply with the New Jersey Tort Claims Act's Notice of Claims provision, a procedural defect for which Plaintiffs have no remedy, and this Count should be dismissed with prejudice in favor of the Township Defendants.

In the Amended Complaint (ECF No. 83), Plaintiffs assert for the very first time that on January 18, 2022 the Teaneck Council adopted Ordinance No. 6993 amending zoning laws to impose additional restrictions upon Plaintiffs by re-zoning Plaintiffs' Property from the Public ("P") Zone to the new Community Center Overlay ("CCO") Zone which allegedly imposed additional requirements upon Plaintiffs, allegedly in response to the filing of Plaintiffs' lawsuit (ECF No. 83, ¶¶ 250 and 251); and that the placement of Plaintiffs' Property in the newly-created CCO Zone was unlawful, unjust, unequal treatment which was retaliatory in nature (ECF NO. 83, ¶ 252) because it imposed new barriers upon Plaintiffs and allegedly imposed tens of thousands of dollars in fees and expenses upon Plaintiffs, in violation of their civil rights (ECF No. 83, ¶¶ 253 and 254). The Amended Complaint fails to plead facts legally sufficient to demonstrate liability on the part of either

3

the Township of Teaneck or its Zoning Officer Melfi or its Assistant Zoning Officer Myszka, therefore requiring a dismissal of the Amended Complaint in their favor.

## STATEMENT OF FACTS

### A. The Parties.

Plaintiffs are two (2) New Jersey non-profit corporations that enjoy tax-exempt status under Section 501(c)(3) of the Internal Revenue Code. According to their public IRS filings, AUCC classified itself as a "Community Recreational Center" when applying for tax exemption with the IRS, and RSFI identified itself to the IRS as a "Human Services organization." Prior to this lawsuit, neither Plaintiff had ever self-identified to any Defendant as a religious organization, assembly, or institution.

The Township of Teaneck ("Teaneck") is a municipal corporation, organized under the laws of the State of New Jersey, and also pursuant to Teaneck local ordinance. Defendant Melfi is a Zoning Officer employed by the Township of Teaneck as the designated administrative officer under the Municipal Land Use Law, and Defendant Myszka is an Assistant Zoning Officer with the same or similar duties. The Township's Zoning Officer is not a member of the Board, nor does the Zoning Officer vote on applications before the Board.

### B. The Zoning Permit, Temporary Certificate of Occupancy, and the Neighbors' Litigation

In the Spring of 2019, AUCC applied for and was granted a Zoning Permit and Temporary Certificate of Occupancy to operate a childcare center, and to renovate the

4

existing structure at 50 Oakdene Avenue (Steinhagen Decl., Ex. O, Zoning Permit; and Ex. P, Temporary Certificate of Occupancy). Those permits were issued by Teaneck's Zoning Officer Melfi and by the Construction Official, respectively. Several months later, AUCC sought to expand the structure's size and to obtain use variances regarding a series of new, unpermitted uses at the Property which included a community center containing a recreation component, and the construction of a building addition containing an indoor swimming pool (Ex. B). AUCC did not need use variances for AUCC's proposed childcare center or a house of worship (though a house of worship use was not proposed) because the prior owners had obtained permits and the use variances for same[2] (Ex B at pp. 18-19).

A group of neighboring property owners sued the Township and AUCC in State Superior Court, arguing that the Zoning Permit and the Construction Permit were issued illegally because AUCC did not first obtain Site Plan approval from either the Zoning Board or from Teaneck's Planning Board. In that litigation, AUCC characterized its proposed use of the Property not as a house of worship, but rather as a "community center with a proposed indoor pool addition and various site improvements" (Ex. T at p. 4). Ultimately the State Court ruled against the neighbors, and upheld the issuance of the Zoning Permit and the Construction Permit for the childcare center.

---

[2] Under applicable municipal and state law, those prior permits and variances run with the property. See, e.g., *Aldrich v. Schwartz*, 259 *N.J. Super*. 300, 308 (N.J. App. Div. 1992) ("Variances run with the land, and are not personal to the property owner who obtained the grant).

### C. *The Site Plan Application and Hearings before the Zoning Board*

On June 28, 2019 (and later revised as of November 20, 2019), Plaintiffs filed a Site Plan Application and plans for variances with the Zoning Board (Ex. B at p. 1), seeking approval to utilize the existing school building and a proposed indoor pool addition as a community center, with outdoor recreational facilities and with the existing/approved childcare use. According to the Application documents, the community center would include a new indoor Olympic-sized swimming pool, classrooms, an "interfaith sanctuary," a multi-purpose room, office space for the childcare center and community center use, a gym area, and Plaintiffs would also reconfigure the parking areas, alter the means of ingress and egress, include a new playground area for the childcare center, and install new basketball courts and a new tennis court (Ex. B at p. 11). Plaintiffs also appealed certain decisions made by Teaneck's Zoning Officer Dan Melfi (Ex. L). The same neighbors who had sued Teaneck and AUCC over the Zoning and Construction Permits filed their own appeals of Mr. Melfi's decisions with the Zoning Board, and said neighbors appeared at the Hearings through counsel to object to Plaintiffs' Application (Ex. M; Ex. N., and Ex. D at p. 3:13-18).

The Application documents did not indicate that Plaintiffs were religious institutions or assemblies, or that Plaintiffs had the specific intent that the building would be used as a house of worship. The testimony presented by Plaintiffs to the Board was that the proposed "interfaith sanctuary" would be used as "a library," with no intended religious function:

MR. STEINHAGEN: Can you give us a little bit more detail about what the house of worship room/sanctuary, community room, what's the intent in terms of what it's going to be used for? Is there a plan?

THE WITNESS: As of right now, we personally call it the library, because we would like it to have some educational material in it. We would like it to be an open area where anybody that wants to come and read or spend some time. But, again, there is no planned activities as of right now except to have it as a place where people can go if they wanted to (Ex C at p. 124:21-25).

When a member of the public asked the same witness to explain how the "house of worship" component fit into the overall project, the following colloquy ensued:

THE WITNESS:  …The religious aspect is because the building actually had a church when we acquired it. And we did not want to lose the religious aspect because of the land hearings and because of our strong religious beliefs. But at the same time, we did not want to limit it to our religious beliefs. We wanted to open it to the rest of the community.

MR. STEINHAGEN: What religious activities are proposed to go on?

THE WITNESS: Well, remember, there are no scheduled activities (Ex. C at pp. 155:1-156:12).

Plaintiffs' attorney confirmed this at a later Hearing when he stated: "There's a sanctuary or a house-of-worship room that is an amenity to the community center, meaning that it's only available to community center members. ***It doesn't have its own congregation*** or separate traffic generator" (Exhibit F at p. 61:10-18 (emphasis supplied)).

After the three Hearings in February and March 2020 concluded many of the remaining issues had been fully addressed, and Plaintiffs needed only to confirm the height of the swimming pool addition, have their engineer return for cross-examination by members of the public, and put on the testimony of their professional planner to justify the

variances that Plaintiffs sought (Exhibit H at pp. 69:22-75:17). In March 2020 Teaneck's local government came to a screeching halt due to the COVID-19 pandemic. During the spring and summer of 2020, Plaintiffs agreed to extend the time for the Board to act since no Hearings were held (Exhibit R). But in September 2020, just as the Zoning Board began holding "Zoom" hearings, Plaintiffs refused to pay their outstanding escrow bills to compensate the Board's professionals for their services (Exhibit S). Although the Amended Complaint alleges excessive escrow charges, at no time did Plaintiffs ever utilize the procedures as outlined in N.J.S.A. 40:55D-53.2a. to appeal and to dispute these escrow charges as being excessive or improper, nor did Plaintiffs pay the outstanding escrow charges.

Since payment was required by N.J.S.A. 40:55D-53.2(c), and since the Board advised Plaintiffs that without payment of the outstanding escrow that the Hearings could not resume, and since Plaintiffs refused to make any payment or consent to an extension of time for the Board to act on the Application, on October 1, 2020 the Board voted to dismiss the Application without prejudice so that Plaintiffs could not claim an automatic approval pursuant to N.J.S.A. 40:55D-10.4, while noting that Plaintiffs could resume the Application when Plaintiffs were ready (Exhibit I).

Once the lawsuit was filed, settlement efforts occurred which provided a tentative framework for Plaintiffs to now submit a new Site Plan Application to the Planning Board, rather than to complete their Application before the Zoning Board, but the efforts stalled

temporarily. The parties attended an in-person Settlement Conference on August 12, 2021 before Magistrate Judge Edward S. Kiel, which resulted in negotiations and the negotiated creation of a partial Settlement Agreement between Plaintiffs and the Zoning Board so as to allow Plaintiffs to resume their Application before the Zoning Board, but the partial Settlement Agreement was not signed by the parties for reasons unknown. In an effort to provide Plaintiffs with a path to receiving Site Plan approval for their community center uses (since the daycare component had previously been approved by the Zoning Board), the Township after careful consideration adopted on January 18, 2022 Ordinance No. 6993 creating a Community Center Overlay ("CCO") Zoning District for former public lands (which lands had been located in a "P" or Public District), and said Ordinance allowed Plaintiffs the opportunity to seek approval for their community center uses with the Township's Planning Board. To date, Plaintiffs have not filed a Site Plan Application with the Planning Board under the new Ordinance No. 6993.

### D.  Procedural History

Plaintiffs filed the original lawsuit Complaint on October 9, 2019. These Defendants previously filed their first Motion to Dismiss Plaintiffs' Amended Complaint on behalf of the Township of Teaneck and Dan Melfi on May 14, 2021 (ECF No. 25). On July 21, 2021 the Court scheduled an in-person Settlement Conference for August 12, 2021 before Magistrate Judge Kiel, and the Defendants' two (2) Motions to Dismiss (ECF Nos. 22 and 25) were administratively terminated by Judge Kiel pending settlement efforts, without

prejudice (ECF No. 29, ¶¶1 and 2). On October 18, 2021 Magistrate Judge Kiel granted all Defendants leave to renew their Motions to Dismiss by November 12, 2021 (ECF. No. 38, ¶5).

On November 12, 2021 these Township Defendants filed their Second Motion to Dismiss Plaintiff's Complaint (ECF No. 44). On December 3, 2021 the two pending Motions to Dismiss were administratively terminated by Judge Kiel (ECF No. 53) because of the pendency of a Motion to withdraw as counsel for the individual Board Members, which Motion was granted on December 20, 2021 (ECF No. 55). New counsel filed Notices of Appearance for the individual Board Members, and all counsel were permitted to file responsive pleadings by March 11, 2022 (ECF No. 71, ¶ 3). Thereafter, on March 11, 2022 the Township Defendants and Defendant Zoning Board filed their Third Motions to Dismiss (ECF Nos. 73 and 74, respectively), and on March 14, 2022 counsel for the individual Board Members (other than Rehman) and for Defendant Rehman filed their Motion to Dismiss (ECF Nos. 75 and 76, respectively).

Plaintiffs filed their Amended Complaint on March 29, 2022 (ECF No. 83), and asked the Court to terminate the four (4) pending Motions to Dismiss (ECF No. 84). On March 30, 2022 Magistrate Judge Kiel entered a Text Order administratively terminating the four (4) pending Motions to Dismiss without prejudice due to the filing of the Amended Complaint, and directing all Defendants to respond to the Amended Complaint by April 19, 2022 (ECF No. 87), as extended by the Court to May 12, 2022 (ECF No. 91). These

10

Township Defendants now ask this Court to decide their Motion to Dismiss the Amended Complaint.

## ARGUMENT

## I.    STANDARD OF REVIEW

### A. *Fed. R. Civ. P. 12(b)(1) and 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action where the District Court lacks subject matter jurisdiction over the dispute. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991). A Rule 12(b)(1) motion can challenge either the sufficiency of the pleadings to establish jurisdiction (a "facial attack"), or the lack of any factual support for subject matter jurisdiction despite the sufficiency of the pleadings (a "factual attack"). *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). For a "facial attack," all allegations in the complaint are accepted as true. *Id.* For a "factual attack," the court may consider evidence outside the pleadings relevant to the question of jurisdiction. *Id.* In any event, the burden is on the plaintiff to prove that the District Court has jurisdiction. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count or a complaint for "failure to state a claim upon which relief can be granted[.]" When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint, and draws all reasonable inferences in favor of the plaintiff. *Phillip v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The facts alleged, however,

must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555. The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*

Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially-plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, *supra*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B. Documents Outside the Pleadings

Though documents outside the pleadings are not ordinarily considered on a Rule 12(b)(6) motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Rossman v. Fleet Bank (R.I.) Nat. Ass'n*, 280 F.3d 384, 388 (3d Cir. 2002) (internal quotations omitted). Courts may consider documents that are "integral to or

explicitly relied upon" in the complaint. *See* *Fallon v. Mercy Catholic Med. Ctr. of SE Pennsylvania*, 877 F.3d 487, 493 (3d Cir. 2017) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "Such documents include exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents." *See* *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 459 (D.N.J. 2020) (citing *Guidotti v. Legal Helpers Debt Resolution*, 716 F.3d 764, 772 (3d Cir. 2013)).

Here, these Township Defendants also rely upon certified transcripts from the seven (7) Hearings held before the Board (s*ee* Ex. C; Ex. D; Ex. E; Ex. F; Ex. G,; Ex. H; and Ex. I). Those transcripts are undisputedly authentic, and Plaintiffs in their Amended Complaint clearly rely on events that transpired during these various Hearings. *See, e.g.,* Exhibit A at ¶¶ 30 (complaining that "Plaintiffs were questioned significantly regarding the proposed Islamic Center, its religious use, even questioning the name. . ."); 78 (alleging that Plaintiffs were questioned about the school's curriculum); 83 (alleging that Plaintiffs were questioned about prayer services); and 208 (alleging that the "hearings were a charade"). It has long been accepted that judicially-noticing the existence of prior proceedings is appropriate under Rule 12(b)(6) scrutiny, which scrutiny can include noticing transcripts of court proceedings. See, e.g., *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Ground Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999). In similar fashion, the Township Defendants also rely upon Plaintiffs' Site Plan Application, their plans, and the various Appeals filed with the Zoning

Board by Plaintiffs and by the objecting neighbors (see Ex. B; Ex. J; Ex. K; Ex. L; Ex. M; and Ex. N). These documents make up a part of the administrative Hearing Record presented to the Board, and these Defendants also rely upon the permits issued by the Township of Teaneck, which permits are government records (*see*, Ex. O at ¶17).

## II.   THIS DISTRICT COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS AGAINST THE TOWNSHIP DEFENDANTS BECAUSE PLAINTIFFS FAILED TO PROVIDE THE ZONING BOARD WITH A MEANINGFUL OPPORTUNITY TO ARRIVE AT A DEFINITIVE FINAL DECISION WITH RESPECT TO PLAINTIFFS' SITE PLAN APPLICATION.

Plaintiffs seek damages and injunctive relief against the Board and its Members and against the Township Defendants under various tort and civil rights theories claiming the denial of various approvals by Teaneck's Zoning Board. But Plaintiffs failed to engage in a good faith Application for those permits, effectively withdrawing their Site Plan Application before the Board could render a final decision on the merits. Plaintiffs' RLUIPA claims therefore do not meet the requirements of the Finality Rule, and do not arise to a justiciable case or controversy over which this District Court would have subject matter jurisdiction, requiring that Plaintiffs' RLUIPA claims as contained in the Amended Complaint be dismissed against the Township Defendants.

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only for matters involving an actual "case or controversy."[3] A justiciable case or

---

[3] "[I]t is well-settled that procedural issues such as standing, mootness and ripeness are to be

controversy exists only where the plaintiff has suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An "injury in fact" is an injury to a legally-cognizable protected interest which is both concrete and particularized, not merely some abstract injury. *Id.* at 560. If an alleged injury is simply too abstract or is not actual or is not imminent, then said alleged injury is not sufficient to confer jurisdiction on a federal court under Article III. *Id*.

The "Ripeness" Doctrine requires courts "to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir.2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3rd Cir. 2003)) (internal quotation marks omitted). In *Williamson County, supra* the United States Supreme Court held that an as-applied Fifth Amendment "Just Compensation" takings claim against a municipality's enforcement of a zoning ordinance is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the so-called "Finality Rule")[.] 473 U.S. at 186.

---

determined prior to any substantive analysis" on a motion to dismiss pursuant to Rule 12(b)(1) or Rule 12(b)(6). *ISP Envtl. Servs., Inc. v. City of Linden*, Civ. No. 05-4249, 2007 WL 1302995, at *7 n.1 (D.N.J. May 3, 2007) (citing *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001).

The Finality Rule has since been applied by the Third Circuit and by this District Court to tort and to constitutional claims challenging governmental land use decisions. *See Congregation Anshei Roosevelt v. Planning and Zoning Bd. Of Borough of Roosevelt*, 338 Fed. Appx. 214, 217 & fn. 4 (3d Cir. 2009) (citing *Taylor Inv., Ltd. V. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993) and *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005)). As the Third Circuit explained in *Congregation Anshei*, the Finality Rule: "(1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Congregation Anshei*, 338 Fed. Appx. at 217 (internal citations omitted). Thus, in the matter at bar Plaintiffs' failure to comply with the Finality Rule makes it impossible to determine if there is any RLUIPA injury to Plaintiffs, thereby requiring a dismissal of the RLUIPA claims made in Plaintiffs' Amended Complaint in favor of the Township Defendants.

The Finality Rule also applies to bar Plaintiffs' other constitutional claims. The Third Circuit noted that: "We have said that Williamson's finality rule bars not only as-applied Just Compensation Takings claims, but also as-applied substantive due process and equal protection 'claims by property owners or tenants who have challenged the denial of a permit by an initial decision-maker but failed to take advantage of available, subsequent

procedures.'" *County Concrete*, *supra*, 442 F.3d at 164 (citing *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d. Cir. 2003); and *Taylor Inv.*, *supra*, 983 F.2d at 1292 (barring plaintiff's "as-applied" substantive due process and equal protection claims against municipal land use decisionmaker as "unripe"). Only when a "decision maker has arrived at a definitive position on the issue" has a property owner suffered "an actual, concrete injury." *Williamson County*, 473 U.S. at 192. Since the Finality Rule bars not only RLUIPA claims and "Just Compensation" takings claims, and also bars "as-applied substantive due process and equal protection claims" by property owners, *County Concrete*, *supra* at 164, the Finality Rule therefore bars all claims made in the matter at bar against the Township Defendants in Counts I, II and III (the RLUIPA claims); Counts IV, V and VI (the LAD, NJCRA and US Constitution, Due Process claims); Counts VII and VIII (the US Constitution and NJ Constitution, Free Exercise claims); Counts IX and X (the US Constitution and NJ Constitution, Equal Protection claims); and Count XIII (the Aiding and Abetting claims).

## III.   PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS AGAINST THE TOWNSHIP AND MELFI AND MYSZKA TO SURVIVE A RULE 12(b)(6) MOTION TO DISMISS PURSUANT TO <u>TWOMBLY</u> AS TO COUNTS I, II, III, VII, VIII, XI, AND XII.

Even if this District Court determines that it has subject matter jurisdiction despite application of the Finality Rule, certain of Plaintiffs' claims should nevertheless be dismissed against the Township Defendants since Plaintiffs' Amended Complaint fails to plead a sufficient factual basis against the Township Defendants as a matter of law. *First,* Plaintiffs'

RLUIPA claims should be dismissed since the Amended Complaint alleges no facts supporting a claim that Plaintiffs' religious rights were ever burdened, or that Plaintiffs are even religious institutions or assemblies, since documents as contained in the Hearing Record upon which Plaintiffs relied upon in the Amended Complaint establish that Plaintiffs' proposed development was a secular one, a community center with a daycare component. *Second,* Plaintiffs' claims arising under the NJMLUL should also be dismissed since Plaintiffs failed to exhaust administrative remedies as required by New Jersey law, and also since this District Court lacks subject matter jurisdiction over claims made pursuant to the NJMLUL. And Plaintiffs' common law claims as pleaded in Count XIII should be dismissed <u>with</u> prejudice for failure to comply with the New Jersey Tort Claims Act.

### A. Plaintiffs' RLUIPA claims as pleaded in Counts I, II, and III fail because the Amended Complaint pleads no facts indicating a substantial burden on religious exercise, or that Plaintiffs are religious institutions or assemblies.

The RLUIPA claims alleged herein should be dismissed against the Township Defendants since the Amended Complaint pleads no facts from which the Court could plausibly infer that the "complained of" conduct in any way implicated Plaintiffs' rights under RLUIPA. Aside from "legal conclusions disguised as factual allegations," the Amended Complaint pleads no facts plausibly demonstrating that any regulation substantially burdens Plaintiffs' free exercise of religion, or that Plaintiffs are religious assemblies or institutions, or that the Township's regulations discriminated against any religious assembly or institution.

The permit applications and the Site Plan Application and testimony that Plaintiffs presented to the Board proposed only secular uses of the Property, which secular uses also included coordinated programs with Teaneck's public school system. This was confirmed by Plaintiffs' own filings in a State Court action against the objecting neighbors, when Plaintiffs claimed that they were seeking approval for a community center with an indoor swimming pool, rather than for a house of worship (Ex. T at p. 4).

The issues explored by the Board at the seven (7) Hearings held related only to the land use impacts from Plaintiffs' Site Plan Application. There were not, as the Amended Complaint alleges, any attempts to interfere with Plaintiffs' religious freedoms or other protected civil rights. A review of the Hearing transcripts confirms that the Board Members' inquiries were directed towards determining what the Plaintiffs actually were proposing to do with the Property. Because of the significant building addition in which Plaintiffs proposed to include an indoor swimming pool, the Board explored whether approving this expansion would affect neighboring properties.

Plaintiffs also assert a "substantial burden" RLUIPA claim. A plaintiff asserting a "substantial burden" RLUIPA claim must show that the government: (1) imposed a substantial burden on religious exercise; (2) that this was not done in furtherance of a compelling government interest; and (3) that it was not imposed in the least restrictive manner. _Congregation Anshei, supra,_ 338 Fed. Appx. at 218 (citing _Westchester Day Sch. v. Vill. of Mamaroneck,_ 386 F.3d 183, 190 (2d Cir. 2004)). The Amended Complaint

contains not one allegation concerning the first element – that Plaintiffs' religious exercise was "substantially burdened," or was even burdened at all by anything that the Board did or did not do. Counts VII and VIII – Plaintiffs' federal and state Free Exercise claims – also fail for the very same reasons.

In support of the "substantial burden" element of a RLUIPA claim, Plaintiffs allege that they "were . . . questioned regarding their prayer services, and if they would be having Friday prayers and regular prayers throughout the day" (Exhibit A at ¶ 55). Responding to questions about a proposed land use and how religion impacts that land use – if those questions had actually been asked – does not arise to a "substantial burden." *Cf., Albanian Associated Fund v. Twp. of Wayne*, 06-Cv-3217, 2007 WL 2904194, *9 (D.N.J. Oct. 1, 2007)(describing application of the substantial burden test in *Washington v. Klem*, 497 F.3d 272 (3d Cir. 2007) to land use matters). RLUIPA does not exempt landowners from participating in the land use hearing process, nor does the First Amendment excuse Plaintiffs' compliance with Teaneck's facially-neutral and generally applicable development ordinance. *See, e.g., Employment Division v. Smith*, 494 U.S. 872, 878 (1990) ("if prohibiting the exercise of religion . . . is . . . merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended."). Moreover, Plaintiffs do not explain how answering those questions (asked primarily by the objecting neighbors) actually interfered with Plaintiffs' own religious exercise.

Plaintiffs also assert RLUIPA "equal terms" and discrimination claims (Counts II and III). RLUIPA's "equal terms" mandate bars the government from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. §2000cc(b)(1). A plaintiff bringing an "equal terms" claim must plead a factual basis that: (1) *it is a religious assembly or institution*; (2) subject to a land use regulation, which regulation; (3) treats the religious assembly on less than equal terms with; (4) a nonreligious assembly or institution; (5) that causes no lesser harm to the interests that the regulation seeks to advance. *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 270 (3d Cir. 2007) (emphasis supplied). RLUIPA's prohibition against discrimination forbids the government from "impos[ing] or implement[ing] a land use regulation that discriminates against any *assembly or institution* on the basis of religion or religious denomination." 42 U.S.C. §2000cc(b)(3) (emphasis supplied). The Amended Complaint however fails to plead specific facts demonstrating that Plaintiffs are religious assemblies or institutions, and there was no evidence presented to the Board during the Hearings on this issue.

The Amended Complaint pleads no plausible facts from which the District Court could infer that Plaintiffs are religious assemblies or institutions. Plaintiffs' Amended Complaint repeatedly refers to their proposed project as an "Islamic Center," but offers no details supporting this conclusory allegation. Plaintiffs also refer to themselves as a

"congregation," but again offer no facts in support of this factual conclusion. These bald allegations are negated by the Site Plan Application documents and by the Hearing testimony submitted by Plaintiffs to the Board and the Board Members. The IRS NTEE classification code for AUCC is "N31, Community Recreational Centers within the Recreation, Sports, Leisure, Athletics category." This IRS filing was submitted in 2019, during the same time period that Plaintiffs filed their Site Plan Application with the Board. The IRS NTEE classification code for RSFI is "P20, Human Service Organizations - Multipurpose within the Human Services." RSFI's IRS filing was submitted in 2018. Testimony submitted before the Board confirms that Plaintiffs are secular organizations that attempted to develop a community center, and not a house of worship. The sole aspect of the development – a small, so-called "sanctuary" or "library" wherein any member of the community center could, if those chose, pray – does not transform a community recreation center or a human services organization into a religious institution or assembly for purposes of RLUIPA. In fact, AUCC's CEO gave that exact analogy to the Zoning Board when asked if a house of worship was being proposed:

> MR. VINCE: Again, what we're trying to do is determine whether or not this is considered a house of worship or not or whether it would be like a chapel at a hospital or something along those lines.
>
> THE WITNESS: Well, I plan on praying on the site, but that doesn't make it a mosque. But anyone else can come in – I mean, I want you all to think of a hospital or an airport prayer room or meditation room (Exhibit C at p. 125:15-24).

Following Plaintiffs' argument to its _illogical_ extreme, any hospital, prison, airport or other development could invoke the substantial protections afforded pursuant to RLUIPA simply by including a prayer room in their design. This is not what Congress intended when it had enacted RLUIPA, and interpreting the RLUIPA statute to provide such protections would go far beyond any federal court's prior reading of the clear statutory RLUIPA language.

Plaintiffs have not pled that they are religious assemblies or institutions, as those terms are defined by the RLUIPA statute. _See Moore-King v. County of Chesterfield, Va._, 819 F.Supp.2d 604, 623-24 (E.D.Va. 2011), _aff'd_ 708 F.3d 560 (4th Cir. 2018) (holding that RLUIPA only applies to religious institutions or assemblies); and _see also Epona v. Cty. of Ventura_, 876 F.3d 1214, 1218 (9th Cir. 2017) (affirming dismissal of an "equal terms" claim since landowners who sought to rent a garden area on the property for use in wedding ceremonies were not a "religious assembly or institution"). Plaintiffs' RLUIPA claims (Counts I, II and III) and Free Exercise claims (Counts VII and VIII) in the Amended Complaint should therefore be dismissed in favor of the Township Defendants.

### B. Plaintiffs' claims under the New Jersey Municipal Land Use Law should be dismissed due to a lack of subject matter jurisdiction, and because Plaintiffs failed to exhaust administrative remedies.

Counts XI and XII of the Amended Complaint, which seek relief under New Jersey's MLUL and are brought pursuant to this District Court's supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367(a), should also be dismissed because this District Court lacks subject matter jurisdiction over claims seeking injunctive relief

pursuant to New Jersey's MLUL, and since appeals from local land use decisions are required to be filed as actions in lieu of prerogative writs governed by the New Jersey Court Rules at Rule 4:69-1 through 4:69-7, and returnable before a Superior Court judge. Moreover, Plaintiffs' Amended Complaint should also be dismissed since pursuant to New Jersey case law a person seeking to challenge the action of a land use board is required to exhaust his or her administrative remedies prior to filing suit. *N.J. Court Rule* 4:69-5.

*N.J. Court Rule* 4:69-5 provides that "Except where it is manifest that the interest of justice requires otherwise, actions under *R*. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted." New Jersey's Supreme Court has held that "the exhaustion of remedies requirement is a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." *Brunetti v. Borough of New Milford*, 68 N.J. 576, 588 (1975). Therefore, there is "a strong presumption favoring the requirement of exhaustion of remedies." *Id.*

Plaintiffs herein never completed their Site Plan Application so as to receive a final definitive decision, nor have Plaintiffs exhausted their administrative remedies with respect to their MLUL injunctive claims. The Amended Complaint presents no facts to suggest that any recognized exceptions to the "exhaustion of remedies" requirement are applicable. New Jersey's courts have suggested that where an administrative agency invites a challenge before making its decision, then requiring the exhaustion of remedies would be futile, *see,*

24

*e.g.*, *Naylor v. Harkins,* 11 *N.J.* 435, 444–45 (1953), but that did not occur herein.  Therefore, Counts XI and XII of the Amended Complaint, which assert claims under the MLUL, should be dismissed in favor of the Township Defendants.

### C. Plaintiffs' Aiding and Abetting claims should be dismissed with prejudice in favor of the Township Defendants because Plaintiffs have not complied with the New Jersey Tort Claims Act.

Plaintiffs' Aiding and Abetting claims as pled in Count XIII should be dismissed <u>with</u> prejudice in favor of the Township Defendants since Plaintiffs never filed a Tort Claims Notice with any of the Township Defendants, as required pursuant to the New Jersey Tort Claims Act, <u>N.J.S.A.</u> 59:1-1, *et seq*. ("the NJTCA").[4] This Tort Claims Act notice requirement is jurisdictional, s*ee* *Ptaszynski v. Uwaneme*, 371 <u>N.J. Super</u>. 333, 343 (App. Div. 2004), and applies to claims against the Township and Melfi and Myszka, as well as to claims against the Board and the Board Members. Failure to comply with the NJTCA requires a dismissal of these two Counts <u>with</u> prejudice in favor of the Township Defendants.

Count XIII of the Amended Complaint alleges that Defendants aided and abetted the violation of Plaintiffs' rights. Aiding and abetting is a common law tort recognized by the New Jersey courts. *See* *State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 387 <u>N.J. Super</u>. 469, 480 (App. Div. 2006).  Since this Count alleges a

---

[4] As this Court noted in *Baldeo v. City of Paterson*, a motion to dismiss for failure to comply with the NJTCA has been analyzed under both <u>Fed. R. Civ. P</u>. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). *Baldeo v. City of Paterson*, at n.6. In this case, just as in *Baldeo*, this distinction makes no difference to the outcome here.

common law tort under New Jersey law, it is subject to the Notice requirements of the NJTCA.

Here, Plaintiffs failed to file a Tort Claim Notice with respect to any of the Township Defendants. The Amended Complaint contains no allegations that Plaintiffs provided the required statutory notice to the Township Defendants, nor does the Amended Complaint offer any excuse, legal or otherwise, as to why there was no compliance with the NJTCA. Plaintiffs' failure to comply with the NJTCA's Notice Provision is therefore fatal to their common law Aiding and Abetting claim, and Count XIII should be dismissed with prejudice in favor of the Township Defendants.

## IV.   PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST THE TOWNSHIP OF TEANECK SINCE PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS ASSERTING MUNICIPAL LIABILITY AGAINST THE TOWNSHIP PURSUANT TO MONELL, AND SINCE PLAINTIFF CANNOT ALLEGE VICARIOUS LIABILITY AGAINST THE TOWNSHIP FOR THE ACTS OF THE OTHER DEFENDANTS.

Plaintiffs' Amended Complaint, which sets forth factually deficient and legally-conclusory allegations of municipal liability against the Township of Teaneck pursuant to RLUIPA, the NJLAD, the NJCRA, the US Constitution and the New Jersey Constitution, the NJMLUL, and the common law, should be dismissed in favor of the Township for failure to plausibly demonstrate a claim for municipal liability against the Township pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Moreover, Plaintiffs' Amended Complaint does not even

identify a specific policy or practice or custom or ordinance or regulation attributable to the Township which allegedly violated Plaintiffs' civil or constitutional rights, especially since most claims made herein seemingly originate from Plaintiffs' Site Plan Application made to the Zoning Board pursuant to the NJMLUL (and claims pertaining to Township Ordinance No. 6993 will be addressed later in this Brief in Point VI).

A review of Plaintiffs' Amended Complaint further discloses that no facts have been sufficiently pleaded regarding the Township of Teaneck's exact involvement in the underlying dispute. In paragraph 7 the Township is noted to be a municipal corporation organized under the laws of the State of New Jersey (and, presumably, the Ordinances of Teaneck Township) (Exhibit A at ¶7). Though Plaintiffs incorrectly plead in paragraph 12 that "Each of the Defendants participated in the conduct complained of herein personally and directly," since that Township cannot act "personally or directly" that would be factually inaccurate. A careful review of the Amended Complaint discloses no allegations made specifically against the Township which would seemingly implicate Monell liability, nor is there a separate Count in the Amended Complaint asserting any form of Monell or Municipal Liability against the Township (except perhaps the new Count XIV). Vague references are made to the Township in various capacities, most of which seem to assert "vicarious liability" on the part of the Township for the acts of the Zoning Board (which is a separate, stand-alone independent public entity) or the individual Board Members or Melfi or Myszka as Zoning Officers, or even for other unnamed "Town" officials, as follows:

27

- Plaintiffs met with Teaneck officials, including Defendant Melfi, and reviewed plans (¶29);

- … each time changing the plans at the behest of Teaneck officials in order to ensure swift and seamless approvals (¶34);

- Plaintiffs were urged by the Town to add a pool so that Teaneck's swimming clubs and high school could use it to practice and to compete (¶38);

- … the pre-approved plans were swiftly rejected by Defendants Melfi and Teaneck (¶54);

- Defendants rejected all of the pre-approved proposals and required the Plaintiffs to go before the Defendant Board of Adjustment (¶70);

- … Defendants Melfi and Teaneck imposed dimensional, bulk, and conditional use requirements upon Plaintiffs (¶99);

- … such requirements were discriminatorily imposed upon the Plaintiffs in denying their permit (¶100);

- … Teaneck imposed a double standard, refused to provide Plaintiffs with the same permits and variances it once gave to a Church at the same site, and treated Plaintiffs more stringently than secular and other religious buildings and developments (¶125);

- Defendants forced Plaintiffs to place nearly thirty-five thousand dollars ($35,000) in escrow with Teaneck. Teaneck then used these funds to hire an array of professionals to oppose the Plaintiffs, issue erroneous findings, and seek to justify the discrimination against Plaintiffs (¶160).

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). In other words, under *Monell* "plaintiffs may not rely on a theory of respondeat superior to impose liability on

municipalities." _Brown v. City of Pittsburg_, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is

when execution of a government's policy or custom, whether made by its lawmakers or by

those whose edicts or acts may fairly be said to represent official policy, inflicts the injury

that the government as an entity is responsible under § 1983." _Monell_, 436 U.S. at 694.

Therefore, "[a] plaintiff can only attribute a constitutional tort to the city itself by showing

the injury was caused by city policy, by city custom, or by policymaking officials' deliberate

indifference to constituents' constitutional rights." _Wright v. City of Phila._, 685 F. App'x

142, 146 (3ʳᵈ Cir. 2017). "'[D]eliberate indifference' is a stringent standard of fault, requiring

proof that a municipal actor disregarded a known or obvious consequence of this action."

_Connick v. Thompson_, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (quoting

_Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown_, 520 U.S. 397, 410, 117 S.Ct. 1382, 137

L.Ed.2d 626 (1997)).

A plaintiff may show deliberate indifference in a failure-to-train discrimination case

in one of two ways: (1) through a pattern of similar constitutional violations providing a

public entity with notice of the need for training its employees; or (2) demonstrating "single-

incident" liability for circumstances in which training is obviously necessary to avoid

constitutional violations. _Connick_, 563 U.S. at 62-64. In general, a plaintiff must establish

deliberate indifference in accordance with the first means in order to state a failure to train

discrimination claim: "A pattern of similar constitutional violations by untrained employees

is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id*. at 62 (quoting *Bryan Cty.*, 520 U.S. at 409).

Here, the relevant policymaker whom Plaintiffs need to show had notice that the Township's Zoning Officers' training in the areas of municipal land use law and zoning regulation was allegedly constitutionally defective (which allegation is strenuously disputed) was perhaps the Township Council. Therefore, the facts in the Amended Complaint need to plausibly demonstrate that: (1) the Township Council had notice of; and (2) "consciously disregarded an obvious risk that the lack of training would subsequently inflict a particular constitutional injury; and (3) that the Township Council's deliberate indifference caused the deprivation of Plaintiffs' constitutional rights. *Bryan Cty.*, 520 U.S. at 411.

In the instant matter, the Amended Complaint's discrimination allegations contain certain conclusory or generalized statements which the United States Supreme Court distinguishes from factual allegations. See *Iqbal*, 556 U.S. at 679 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"). The above-mentioned allegations in Plaintiffs' Amended Complaint, as outlined on page 28 of this Brief, barely amount to a pure recitation of the elements of *Monell* liability, which allegations does not provide the necessary factual support to state a plausible claim against Teaneck as a matter of law. See e.g., *Schweizer v. Middle Twp. Mayor and Governing Body*, No. 17-960, 2018 WL 2002792, at *4 (D.N.J. Apr. 30, 2018) (dismissing Section 1983 claims where the

30

complaint "merely provide[d] conclusory allegations…without any factual support"); and _Estate of Bard v. City of Vineland_, No. 17-1452, 2017 WL 4697064 at *3 (D.N.J. Oct. 19, 2017).

Accordingly, the allegations found in Plaintiffs' Amended Complaint fail to state a plausible "municipal liability" claim against Teaneck as a matter of law. See _McTernan v. City of York_, 564 F.3d 636, 658-59 (3rd Cir. 2009) (affirming dismissal of Section 1983 claims against municipality where complaint lacked allegations of knowledge or direction on the part of specific individual municipal decisionmakers); and _Moriarty v. DiBuonaventura_, No. 14-2492, 2014 WL 3778728, at *9 (D.N.J. July 31, 2014). And Plaintiffs' Amended Complaint should also be dismissed in its entirety in favor of Defendant Teaneck since Plaintiffs' allegations as to Teaneck's role in the alleged violation of Plaintiffs' constitutional rights during the Board's Site Plan Application Hearing process do not satisfy the high standard that is required for municipal liability under _Monell_ and its progeny. See _Connick_, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"); _Zampetis v. City of Atlantic City_, No. 15-1231, 2016 WL 5417195, at *6 (D.N.J. Sept. 28, 2016); and _Grandizio v. Smith_, No. 14-3868, 2015 WL 58403, at *6 (D.N.J. Jan. 5, 2015).

**V.  PLAINTIFFS' AMENDED COMPLAINT SHOULD ALSO BE DISMISSED IN FAVOR OF DEFENDANTS MELFI AND MYSKZA AS ZONING OFFICERS SINCE PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS DEMONSTRATING ANY INDIVIDUAL OR OFFICIAL CAPACITY LIABILITY UNDER ANY PLEADED CAUSE OF ACTION AGAINST DEFENDANTS MELFI AND MYSZKA.**

The claims against Zoning Officer Melfi and Assistant Zoning Officer Myszka in both their official and his individual capacities should also be dismissed in their favor and <u>with</u> prejudice since the facts pleaded against Melfi and Myszka do not show any direct or personal involvement by Melfi and Myszka in any wrongdoing or in any discriminatory conduct; because some of the claims are factually inaccurate as they pertain to their roles in the underlying events, especially during the Site Plan Application process; and because most of the conduct attributed to Melfi and Myszka is not plausibly pleaded as either improper or as discriminatory conduct by Melfi and Myszka directly and personally.

Plaintiffs make the following "allegations" as to Defendant Melfi:

- Defendant Melfi made several representations to the Plaintiffs, including that the revisions were acceptable (note – Melfi advised that the plans were acceptable for review by the Board, but never advised that the Plans were approved or would be approved by the Board), and that Plaintiff would receive swift approvals (note that Defendant Melfi is not a Board Member, and cannot "guarantee" that Plaintiffs would receive <u>swift</u> approvals from the Board, especially given the pandemic) (¶36)

- … and the Defendants, including Defendant Melfi assured Plaintiffs that the plans would be approved without any issues (note – at all times Plaintiffs were told that the Plans required presentation to the Board, plus public Hearings, and finally Board approval) (¶42)

- … the plans had 63 parking spaces, which Defendant Melfi deemed to be sufficient. This was vastly different than Defendant Melfi's subsequent claim that

the Site required 300 parking spaces, which he knew would be prohibitive for the Site and did not comport with the requirements placed on the School or Church that previously occupied the structure (¶45);

- … the pre-approved plans (note – there is no such thing as a pre-approved plan – Melfi "screened" the plans, which plans still required Board approval) were swiftly rejected by Defendant Melfi and Teaneck (¶54);

- The Defendants rejected all of the pre-approved proposals and required Plaintiffs to go before the Defendant Board of Adjustment (note – since the proposed uses as a community center and childcare center were different than the previous use – as a house of worship – Site Plan approval by the Zoning Board was required) (¶70);

- Defendant Melfi then imposed numerous onerous requirements upon the Plaintiffs, many of which he knew did not apply or he was applying on unequal terms (¶98);

- … despite being in a Public Zone, … Defendants Melfi and Teaneck imposed dimensional, bulk and conditional use requirements upon the Plaintiffs (note – a house of worship or secular community center is not permitted in a Public zone) (¶99);

- … when Defendants claimed that the initial 63 parking spaces, which Defendant Melfi claimed was initially sufficient, were not enough and that 93 spaces were required, Plaintiffs downsized the project to create a total of 99 spaces (note – the initial parking calculation did not include the pool, later added to the Site Plan Application by Plaintiffs) (¶174);

- Defendant Melfi and the BOA imposed a greater parking requirement upon the Islamic Center than a larger secular Center (¶183).

Plaintiffs make the following "allegations" as to Defendant Myszka:

- Myszka collaborated with Defendants Teaneck and Melfi to cover their tracks by issuing frivolous violations and manufactured a reason to deny Plaintiffs' permit applications (¶65);

- Myszka took direct action as well as aided and abetted the Defendants by writing frivolous summonses so that the Defendants would have yet another false reason to deny Plaintiffs' request for a permit (¶66);

- Defendant Myszka and Melfi collaborated so that Defendant Myszka would issue summonses to Plaintiffs for infractions AFTER Plaintiffs applied for permits so there was a manufactured and false basis to refuse Plaintiffs' permit (¶67);

- Defendants Teaneck and Melfi refused to approve Plaintiffs' application to modify an existing fence, then proceeded to collaborate with Defendant Myszka to issue a violation for the very same fence (¶68).

The claims against Defendants Melfi and Myszka should be dismissed since they are not plausibly pled, since most of the claims do not implicate discriminatory practices (but, rather, the Zoning Officer's own discretionary decisions, also subject to Board approval), since some of the conduct attributed to Defendants Melfi and Myszka appears to be conduct attributed to others (including but not limited to other unnamed Teaneck officials, the Construction Official, or the Zoning Board), and not to them; and because it is entirely improper to plead conduct against all Defendants as a group, without failing to allege what Melfi and Myszka as individuals personally did or did not do. As the Third Circuit has affirmed, "[a]n individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Mere "conclusory allegations against [d]efendants as a group" that "fail to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. *Galicki v. New Jersey,* Civil Action No. 14-cv-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015). A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." *Id.* Without sufficient factual allegations pertaining to each defendant's wrongdoing, a complaint is not plausibly pled. *8 Erie, LLC v. City of Jersey City*, Civil Action No. 19-cv-9351, 2020 WL 689147 at *3 (D.N.J. May 21, 2020). A plaintiff must allege facts that form a plausible basis for each individual defendant's liability for a given claim. *Id.* A complaint may not simply lump together all defendants without specifying "which defendants engaged in what wrongful conduct." *See, e.g., Falat v. County of Hunterdon*, Civil Action No. 12-cv-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).

Most of the claims against Defendants Melfi and Myszka as pled in the Amended Complaint rely upon impermissibly vague group pleading, in which it is alleged that "Defendants" engaged in certain wrongful conduct. Since the Amended Complaint has named fourteen (14) separate Defendants (exclusive of fictitiously-named defendants), each of whom occupied different positions and who presumably had different roles in the alleged discrimination, Plaintiffs cannot merely state that "Defendants did x" – Plaintiffs must specifically allege which Defendants engaged in what wrongful conduct. *In re Sagent Tech, Inc.*, 278 F.Supp.2d 1079, 1094 (N.O.Cal. 2003). Without knowing exactly what wrongful

conduct Defendants Melfi and Myszka are alleged to have engaged in, Defendants Melfi and Myszka have not been given "fair notice" of the allegations made against them. *Twombly*, *supra*, 550 U.S. at 555; and see Rule 8(a)(2) (which Rule requires that a complaint "give the defendant fair notice of what the claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A complaint containing such vague group pleadings must be dismissed. *Id*.

Finally, since Defendants Melfi and Myszka as Zoning Officers exercise what is referred to as administrative discretion, Defendants Melfi and Myszka as municipal officials acting in an administrative capacity are therefore entitled to qualified immunity from suit for alleged violations of federal law, *Burke v. Deiner*, 97 N.J. 415, 470-72 (1984); and *T&M Homes v. Twsp. Of Mansfield*, 162 N.J. Super. 497, 512-18 (Law Div. 1978), an issue which should be decided at the inception of a case through a motion to dismiss. *Timber Homes Properties, Inc. v. Chester Tp.*, 205 N.J. Super. 273, 285-89 (Law Div. 1984).

## VI.  NEW COUNT XIV OF PLAINTIFFS' AMENDED COMPLAINT SHOULD ALSO BE DISMISSED IN FAVOR OF THE TOWNSHIP DEFENDANTS BECAUSE DEFENDANT TEANECK'S ADOPTION OF ORDINANCE NO. 6993 IS PROTECTED BY ABSOLUTE LEGISLATIVE IMMUNITY, AND SINCE DEFENDANTS MELFI AND MYSZKA ARE PROTECTED BY QUALIFIED IMMUNITY

To the extent Plaintiffs argue that the Township Defendant are liable to them due to the passage on January 18, 2022 of Ordinance No. 6993, which Ordinance re-zoned Plaintiffs' Property from the Public "P" Zone to the new Community Center Overlay Zone allowing Plaintiffs to proceed through the Planning Board for the required approvals for

Plaintiffs' new yet unapproved uses (community center with a recreation component, with swimming pool), it is submitted that the claims made against Defendant the Township related to the passage of the Ordinance and application of same to Plaintiffs' Property are immunized by absolute legislative immunity, and that the claims made against Defendants Melfi and Myszka are immunized by qualified immunity from RLUIPA and Section 1983 and NJ Civil Rights Act claims. Plaintiffs contend generally that the re-zoning of the Property imposed additional restrictions upon Plaintiffs' use of the Property (¶250), that the re-zoning was retaliatory since it was based upon Plaintiffs' filing of the within lawsuit (¶251), that said re-zoning was unlawful and discriminatory against Plaintiffs in violation of RLUIPA, the NJCRA and Section 1983 (¶289), and that the re-zoning constituted unequal treatment of Plaintiffs since no other secular or religious entity was subjected to re-zoning due to a lawsuit (¶347).

Although legislative immunity from federal claims and state claims arises from difference sources, in this case the scope of immunity is the same for both. State legislators' immunity from federal claims comes from the federal common law, which "in civil cases ... is coterminous with that of the immunity provided by the Speech or Debate Clause." *Larsen v. Senate of Pa.*, 152 F.3d 240, 249 (3d Cir. 1998) (discussing immunity and liability under § 1983); *see* U.S. Const. art. I, § 6, cl. In civil cases, a legislator is immune for "all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376,

71 S.Ct. 783, 95 L.Ed. 1019 (1951)). This sphere includes acts that are "quintessentially legislative" or that are "integral steps in the legislative process." *Id.* at 55, 118 S.Ct. 966. This includes several activities within the legislative process: legislative factfinding and investigation, writing committee reports, offering resolutions, voting, and "the things generally done in a session of the House by one of its members in relation to the business before it." *Youngblood*, 352 F.3d at 839 (internal quotation marks omitted) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1880)).

The Court's analysis should be unaffected by Plaintiffs' allegation that the Teaneck Council acted with discriminatory intent. Both legislative and qualified immunity protect legislators irrespective of their subjective intent. See *Youngblood*, 352 F.3d at 840–41 (legislative immunity)*; and* *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (qualified immunity).

*Ryan v. Burlington Cnty., N.J.* created two criteria for an action to be legislative; the action must be both substantively legislative (*i.e.*, involve general policy decisions rather than target individuals) and procedurally legislative (*i.e.*, passed by proper legislative procedures). *See* 889 F.2d 1286, 1290–91 (3d Cir. 1989). Courts generally ask whether an official act is substantively and procedurally legislative when classifying actions performed by municipal officials who possess both legislative and administrative powers. *Larsen*, 152 F.3d at 252. When determining whether state legislators are acting legislatively, however, courts generally consider only the nature of the act, rather than its target or effect. *See id.*; *Bogan*,

523 U.S. at 54, 118 S.Ct. 966. Accordingly, Defendant Teaneck and its Council are entitled to absolute legislative immunity for passing Ordinance 6993.

Qualified immunity shields officials such as Defendants Melfi and Myszka (for their alleged participation in the enactment of Ordinance No. 6993) and the Township's Council from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. When analyzing a qualified immunity claim courts generally consider: "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016).

To be "clearly established," a right must be so apparent that "every reasonable official would understand that what he is doing is unlawful." *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020). An official will not be charged with such an understanding unless existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The legal principle established in a precedential case must "clearly prohibit the offic[ial's] conduct in the particular circumstances before him." *Id.* at 581. Plaintiffs' claims against the Township Defendants for enactment of Ordinance No. 6993 fail because Plaintiffs have not pointed to any precedential case prohibiting legislators from re-zoning former Township-owned

property. Given the high degree of specificity required to prove that a right has been "clearly established," the general constitutional rights that Plaintiffs articulate simply do not suffice.

Even assuming that Plaintiffs have alleged violations of constitutional and statutory rights that are not foreclosed by the Teaneck Council's First Amendment rights, that would show only Plaintiffs have stated a claim; it does nothing to show that Teaneck's Council violated clearly-established law. That failure, combined with an adverse precedent from other courts, puts Plaintiffs well short of showing that the rights Plaintiffs seek to vindicate here were clearly-established. So Defendant Teaneck is entitled to legislative immunity, and its Council and Defendants Melfi and Myszka are entitled to qualified immunity arising from the enactment of Ordinance No. 6993.

## **CONCLUSION**

For all of the foregoing reasons, and for all of the reasons stated herein in this Brief and also argued in the Briefs filed on behalf of the Board and the Board Member Defendants, Plaintiffs' Amended Complaint should be dismissed in its entirety, and with prejudice, in favor of Defendants the Township of Teaneck and Dan Melfi and Adam Myszka.

HANRAHAN PACK, LLC
*Attorneys for Defendants the Township of*
*Teaneck, Dan Melfi, and Adam Myszka*

By: _____
THOMAS B. HANRAHAN, ESQ.

Dated:  May 13, 2022