UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AL UMMAH COMMUNITY CENTER, AKA, AUCC FAMILY, EDUCATION AND FAITH CENTER, a New Jersey Non-Profit Corporation, RAY OF SUNSHINE FOUNDATION, INC., a New Jersey Non-Profit Corporation,<br><br>       Plaintiffs,<br><br>  v.<br><br>TEANECK, TEANECK ZONING BOARD OF ADJUSTMENT, and its Members, HARVEY ROSEN, DANIEL WETRIN, MONICA HONIS, JENNIFER PRINCE, JERRY L. BARTA, EDWARD MULLIGAN, ATIF REHMAN, MARK MERMELSTEIN, ZEV GREEN, JAMES BROWN, in their individual and official capacities, DAN MELFI, individually and in his official capacity, ADAM MYSZKA, individually and in his official capacity, and JOHN AND JANE DOES 1-20, in their individual and official capacities,<br><br>       Defendants. | Civ. No. 20-14181 (KM)(ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  Plaintiffs Al Ummah Community Center, also known as AUCC Family, Education, and Faith Center, and Ray of Sunshine Foundation, Inc. (collectively, "AUCC") initiated this action against the Township of Teaneck, the Teaneck Zoning Board of Adjustment ("ZBA"), the individual members of the ZBA, and two officials of the Township based on the allegedly discriminatory treatment AUCC received when applying for a permit, and subsequently a variance, to develop its property in Teaneck into an Islamic community center.

1

To date, AUCC has not received a permit, variance, or temporary certificate of occupancy permitting it to use the property as a community center.

More than a year into the litigation, the Township passed an ordinance that rezoned the property at issue ("the Ordinance"). When the local proceedings took place, and when this action was filed, the property was in the "Public Lands" zone—which permits schools, administrative facilities, parking lots, libraries, and other public buildings or structures without any restrictions, *see* Teaneck Code Sec. 33-24.23(b). Thereafter, however, it was placed in a newly-created "Community Center Overlay District," which specifically permits privately-owned nonprofit community centers with certain dimensional, density and bulk restrictions. (DE 94, Ex. A.)[1] The only properties located in the new zoning district are AUCC's property and one other.

Following the adoption of the Ordinance, AUCC amended its complaint to add factual allegations and a claim based on the rezoning, which it maintains is discriminatory and retaliatory in nature. Now before the court are four separate motions to dismiss the amended complaint, filed by the Township and its named officials, Dan Melfi and Adam Myszka; the ZBA as an entity; Atif Rehman, a member of the ZBA; and the remaining named ZBA members. For the reasons set forth below, the motions to dismiss are **GRANTED** and the amended complaint is dismissed without prejudice to amendment.

I.  **Background**

　　A. **Factual allegations**

The plaintiffs are Islamic faith-based nonprofit organizations incorporated in New Jersey. (Compl. ¶¶5-6.) They own a 2.25-acre property in Teaneck, on which lies a two-story building that was once a public school. (*Id.* ¶¶16-17.) After the school was decommissioned, the property was sold to a church and used as a house of worship, a religious school, and a daycare

---

[1]   Certain key items from the record will be abbreviated as follows:
　　DE = Docket entry number in this case
　　Compl. = Amended Complaint (DE 83)

facility. (*Id.* ¶¶21-22, 93.) AUCC purchased the property from the church and now seeks to turn it into an Islamic community center that would include a house of worship, a daycare facility, and other amenities. (*Id.* ¶¶25-27, 48.)

Beginning in 2018, AUCC met with Teaneck officials, including senior zoning officer Dan Melfi, to discuss its proposed plans for the community center. (*Id.* ¶¶29, 34.) AUCC alleges that it was "questioned significantly" about the Islamic nature of the center and was encouraged by Township officials to downplay the fact that it would be an Islamic center so as to not trigger opposition from local residents. (*Id.* ¶¶30-37.) For instance, Melfi advised AUCC to use an acronym for the center, rather than the full Arabic name. (*Id.*) AUCC was also instructed to minimize the prayer space in the proposed plans and to add a pool so that Teaneck's swimming clubs and high school could use it to practice and compete. (*Id.* ¶38.)

According to the amended complaint, before making a formal submission to the Teaneck permit office, AUCC presented its proposed plans to Melfi and other Township officials, who assured AUCC that the plans would be approved without any issues. (*Id.* ¶42.) Yet, in September 2019, the formally submitted plans were rejected on the grounds that ZBA approval was required and that a permit could not be issued on a property with outstanding violations. (*Id.* ¶¶43, 61.)

AUCC asserts that a permit to develop the community center should have been granted outright. At the time of denial, the property was located in Teaneck's Public Lands zone, which allows, among other uses, recreational facilities. (*Id.* ¶¶48-50.) There are no dimensional, density, or bulk restrictions in the Public Lands zone. (*Id.* ¶99.) *See* Teaneck Code Sec. 33-24.23(b). Thus, AUCC asserts that it was not required by law to seek a use variance from the ZBA, nor was it required to seek a variance from any dimensional, density, or bulk restrictions. (*Id.* ¶62.) In addition, AUCC asserts that defendant Adam Myszka, another Township official, collaborated with Melfi to issue frivolous violations on the property and thereby manufacture a reason to deny the

3

permit application. (*Id.* ¶¶63-68.) Separately, AUCC alleges that Melfi further attempted to prevent it from developing an Islamic community center by determining that the center required 300 parking spaces—a number that would be cost-prohibitive for AUCC. (*Id.* ¶45.)

Following the denial of the permit, AUCC applied to the ZBA for a variance, and the ZBA held a number of public hearings on AUCC's proposal. (*Id.* ¶¶72, 76.) At these hearings, the ZBA allegedly encouraged the townspeople in attendance "to continue asking questions without limit or care for how long the questioning went on for, or whether or not the questions posed were duplicative and therefore a waste of time." (*Id.*) Despite the fact that the ZBA normally limits the number of times an individual member of the public can speak, it did not do so with regard to AUCC's application and instead allowed the same individuals to speak again and again, taking up substantial time at the hearings. (*Id.* ¶¶79-81.)

In particular, AUCC alleges that it was repeatedly questioned about its daycare curriculum and the prayer services it planned to hold at the center. (*Id.* ¶¶78, 83.) One ZBA member, Atif Rehman, allegedly pointed out at a hearing that the ZBA was handling AUCC's application differently from other applications it had considered in the past, including a "Semitic" application. (*Id.* ¶¶79-80.)

AUCC asserts that the endless questioning and public opposition that the ZBA permitted to be voiced at the hearings was a deliberate tactic to delay ruling on the application. (*Id.* ¶¶200-203.) It was also intended to cause AUCC to incur significant fees in the form of escrow funds; AUCC placed nearly $35,000 in escrow with Teaneck to fund the application but was subsequently asked to place an additional $25,000 in escrow after the initial sum was used up. (*Id.* ¶¶160-163.) AUCC was told that if it did not fund the escrow account, its application would no longer be considered. (*Id.*) Allegedly, no other entities have been forced to pay these amounts to have their applications be heard. (*Id.* ¶¶163-167.)

According to the amended complaint, the ZBA denied AUCC's application on October 1, 2020. (*Id.* ¶225.) All of the named members of the ZBA, except Atif Rehman, voted to deny the application. (*Id.* ¶226.) Because AUCC has not been granted a temporary certificate of occupancy to use the existing building as a community center, it has not been able to serve the Islamic community in even in a limited capacity. (*Id.* ¶119-121.)

### B. This litigation

AUCC commenced this action on October 9, 2020. (DE 1.) It filed an amended complaint in March 2022 after the Ordinance was passed. (DE 83.)

The amended complaint asserts fourteen claims arising under the New Jersey Law Against Discrimination, the New Jersey Civil Rights Act, the New Jersey Municipal Land Use Law, the federal Religious Land Use And Institutionalized Persons Act ("RLUIPA"), and the New Jersey and United States Constitutions. Among the forms of relief sought are compensatory and punitive damages and an injunction granting AUCC the permits, variances, and approvals it needs to operate the community center as proposed in its plans.

In May 2022, all defendants moved to dismiss the amended complaint. Four separate motions to dismiss, with accompanying briefs, were filed by the Township, Melfi, and Myszka; the ZBA as an entity; Atif Rehman; and the remaining named ZBA members. (DE 94, 95, 96, 97.)

In support of their motions, all defendants argue that the plaintiffs' claims are not ripe for review because the ZBA did not render a final decision on AUCC's application to develop the community center. (*See, e.g.*, DE 94 at 14-17.) The ZBA members attached to their brief the ZBA's October 1, 2020, decision, which states that AUCC's application was dismissed without prejudice, rather than denied on the merits. (DE 95, Ex. U at 7.) According to that decision, the ZBA held five hearings on AUCC's application between August 2019 and February 2020. (*Id.* at 1.) After the COVID-19 pandemic hit in March 2020, AUCC consented to numerous extensions of the ZBA's 120-day

5

deadline to act on the application. (*Id.* at 3.) *See* Teaneck Code Sec. 2-108. In October 2020, however, AUCC refused to grant a subsequent extension or to replenish its professional escrow account. (*Id.* at 7.) Rather than take no action before the deadline, which would result in the application's automatic approval, the ZBA chose to dismiss without prejudice. (*Id.* at 4-6.) The decision states that if AUCC refiles its application and remedies the deficiency in the escrow account, the ZBA will again consider the application. (*Id.* at 6-7.)

The defendants thus argue that AUCC's claims are unripe because there has not been a final decision on the application, and that the Court therefore lacks subject-matter jurisdiction over AUCC's claims. *See* Fed. R. Civ. P. 12(b)(1). Rehman argues, as well, that the court lacks subject-matter jurisdiction over AUCC's claims because they have been mooted by the passage of the Ordinance, which specifically designates a "community center" as a permitted use in the zone where the property lies.

In addition to these jurisdictional arguments, all defendants move to dismiss the amended complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The defendants contend, among other asserted deficiencies, that the complaint contains impermissible group pleading, in that it sets forth allegations against the defendants as a group without specifying which defendants engaged in what wrongful conduct.

The plaintiffs filed briefs in opposition to the four motions to dismiss in July 2022. (DE 103, 104, 105, 106.) Later that month, all defendants except for the ZBA as an entity filed briefs in reply (DE 111, 112, 113).

## II. Discussion

### A. Ripeness and Mootness

Under Article III of the United States Constitution, federal courts have subject-matter jurisdiction only over matters involving "cases" or "controversies." U.S. Const. art. III, § 2. "Courts enforce the case-or-controversy requirement through several justiciability doctrines that 'cluster about Article III,'" including the doctrines of ripeness and mootness. *Toll Bros., Inc. v.*

*Township of Readington*, 555 F.3d 131, 137 (3d Cir. 2009), quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984). Because they are jurisdictional in nature, issues of ripeness and mootness are to be determined prior to any substantive analysis on a motion to dismiss. *See ISP Envtl. Servs., Inc. v. City of Linden*, Civ. No. 05-4249, 2007 WL 1302995, at *7 n.1 (D.N.J. May 3, 2007). If a court determines that it lacks subject-matter jurisdiction over a matter, the matter must be dismissed. *See* Fed. R. Civ. P. 12(h)(3).

### 1. Ripeness

"The ripeness doctrine serves to 'determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)). Pursuant to the Supreme Court's decision in *Abbott Laboratories v. Gardner*, a court evaluating the ripeness of an action must consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

"For the fitness prong, '[t]he principal consideration is whether the record is factually adequate to enable the court to make the necessary legal determinations. The more that the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe, and vice-versa.'" *Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394, 403 (D.N.J. 2019) (quoting *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1249 (3d Cir. 1996)).

In the context of land use disputes, the Supreme Court has held that a claim is not ripe until the government entity charged with implementing the land use regulation has reached a final decision regarding the application of the regulation to the property at issue. *See Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d. Cir. 2006). This so-called "finality rule" serves

multiple purposes; it: "(1) aids in the development of a full record; (2) provides the court with knowledge as to how a regulation will be applied to a particular property; (3) may obviate the need for the court to decide constitutional disputes if a local authority provides the relief sought; and (4) shows the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Congregation Anshei Roosevelt v. Plan. & Zoning Bd. of Borough of Roosevelt*, 338 F. App'x 214, 217 (3d Cir. 2009) (quotation omitted).

The finality rule was first applied by the Supreme Court in a case involving an as-applied Just Compensation Takings claim under the Fifth Amendment. *See Williamson County Regional Planning Com. v. Hamilton Bank*, 473 U.S. 172 (1985). In *Williamson*, the Court held that the property developer's Takings claim against a zoning board that had rejected the developer's proposal for a new subdivision was not ripe because the appeals board had not acted. *See id.* at 186-194. Any takings claim, said the Court, was not ripe until a variance was finally sought and denied. *Id.*[2]

In the Third Circuit, the finality rule applies not only to as-applied Just Compensation Takings Claims, but also to "as-applied substantive due process and equal protection claims 'by property owners or tenants who have challenged the denial of a permit by an initial decision-maker but failed to take advantage of available, subsequent procedures." *Cnty. Concrete Corp.*, 442 F.3d at 164, quoting *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d Cir. 2003). "Only once a 'decision maker has arrived at a definitive position on the issue' has a property owner been inflicted with 'an actual, concrete injury.'" *Cnty. Concrete Corp., supra*, quoting *Williamson*, 473 U.S. at 192.

---

[2] The requirement of finality is to be distinguished from that of exhaustion. The *Williamson* Court held that the developer's claims were unripe for a second reason: The developer had not sought compensation for the alleged taking through the state's procedures for doing so. *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2169 (2019), citing *Williamson*, 473 U.S. at 194. That second holding of *Williamson*— referred to as the "exhaustion requirement"—was overruled by the Court in *Knick*, but *Knick* left the finality rule intact. *See* 139 S.Ct. at 2169 ("Knick does not question the validity of [the] finality requirement, which is not at issue here.")

8

"Th[e finality] rule does not apply, however, to facial attacks on a zoning ordinance, i.e., a claim that the mere enactment of a regulation either constitutes a taking without just compensation, or a substantive violation of due process or equal protection." *Cnty. Concrete Corp., supra.* "A final decision is not necessary in that context because when a landowner makes a facial challenge, he or she argues that any application of the regulation is unconstitutional; for an as-applied challenge, the landowner is only attacking the decision that applied the regulation to his or her property, not the regulation in general." *Id.* (Quotations omitted.)

### 2. Mootness

The mootness doctrine represents another approach to the question of whether this is the appropriate time for judicial review. "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007), quoting *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003). Thus, while the ripeness inquiry considers whether there may be a better time for judicial review in the future, the mootness inquiry asks whether the time for judicial review has passed because the parties no longer possess a legally cognizable interest in the outcome. *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 684 (3d Cir. 1980).

The Supreme Court has developed a two-pronged test for mootness. "A case may become moot if (1) 'it can be said with assurance that there is no reasonable expectation . . .' that the alleged violation will recur,' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.*, quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). "If a claim is based on a statute or ordinance that is amended after the litigation has begun, the amendment may or may not moot the claim, depending on the impact of the amendment." *Nextel Partners Inc. v. Kingston Twp.*, 286 F.3d 687, 693 (3d Cir. 2002).

### 3. Analysis

The ripeness and mootness inquiries are intertwined in this case. Particularly as to the injunctive relief sought, they both pertain to whether the court should now review AUCC's claims based on its application to the Township and the ZBA for approval to develop the community center. The defendants argue, on the one hand, that the claims are moot in relation to the prior ZBA proceedings because (a) from when this action was filed through the present day, the ZBA has not made a truly final decision on the application; and (b) as of now, the newly enacted Ordinance has altered the zoning regulations applicable to AUCC's property, supplanting the prior standards that governed the ZBA proceedings. Viewed through the lens of ripeness, on the other hand, the claims going forward are allegedly not yet ripe because no local body has yet addressed, let alone made any decision as to, the status of AUCC's application under the newly enacted Ordinance.

Before addressing these arguments, I note that the analysis may be shaped by two background issues: first, whether AUCC's proposed use of its property as a community center was, in fact, a permitted use in the former Public Lands zone, such that no use variance was required; and second, whether the ZBA denied AUCC's application for a variance on the merits or merely dismissed it without prejudice.

At the motion to dismiss stage, a court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The court is not required, however, "to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies." *See McGill v. Clements*, No. 3:19-CV-01712, 2021 WL 232599, at *2 (M.D. Pa. Jan. 22, 2021), citing *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018).

In this instance, the complaint is grounded in part on the ZBA's alleged denial of AUCC's application on October 1, 2020; hence, the court may consider the undisputedly authentic decision of the ZBA, which the defendants

10

attached to their briefs.³ Because the ZBA's decision makes it clear that AUCC's application was dismissed without prejudice, I will not credit the allegation in the complaint that the application was ever formally and finally denied.

I also will not credit the allegation that, under the then-prevailing zoning classification, no use variance from the ZBA was required for AUCC's proposed community center. The Teaneck development regulations, of which I take judicial notice, do not list community centers under the permitted uses in the Public Lands zone. Although recreational facilities are allowed in the Public Lands zone, AUCC emphasizes throughout its complaint that it sought to create a religious community center with a range of amenities, *including* recreational facilities. (*See, e.g.*, Compl. ¶6.) Indeed, AUCC itself, in another connection, accuses the defendants of "purposefully misconstru[ing] the Site as a recreational and community facility, rather than the Religious Community Center that it is." (*Id.* ¶126.) It may be apparent, as AUCC says, that a variance should have been granted, but it is not at all apparent that one was not required.

With those understandings, I turn first to the issue of mootness. I conclude that the passage of the Ordinance did not, or at least did not wholly, moot AUCC's claims. That a community center is an approved use in the newly created zone, subject to various conditions, does not guarantee that AUCC will receive the permits and approvals it seeks. While the rezoning may ease the

---

³ The defendants also attach to their briefs the transcripts of the multiple hearings in front of the ZBA and urge the court to consider these transcripts in ruling on the motions to dismiss. This I will not do. While "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment," the transcripts are neither integral to nor explicit relied on by the amended complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). I reach the same conclusion with regard to AUCC's request that I consider the transcript of the deposition of Atif Rehman; that transcript was not referenced in any manner in the amended complaint (indeed, the deposition did not take place until several months after the amended complaint was filed). (*See, e.g.*, DE 104 at 19.) In short, this is the stuff of summary judgment; we are still at the pleading stage.

11

process for AUCC, when I credit the allegations of the amended complaint (as I must), it cannot "be said with assurance that there is no reasonable expectation" that AUCC's application could no longer be treated in a discriminatory manner. *Nextel Partners*, 286 F.3d at 693. For example, community center use is subject to dimensional, density, and bulk restrictions in the newly created zone. Such restrictions, though facially neutral, might well serve as a vehicle for discrimination (again, I here accept the allegations of the complaint for purposes of argument). And it remains possible that an application for a variance from these restrictions could be denied on a discriminatory basis.[4]

Critically, AUCC does not now challenge the prior Teaneck zoning *regulations* that applied to it before the adoption of the Ordinance. Rather, AUCC challenges the actions of Township officials and the ZBA in considering its application, and alleges that the discriminatory animus of the defendants continues.

I turn to ripeness. That the ZBA did not deny AUCC's application for a variance does not quite settle the ripeness question. True, the application was not finally and formally denied. AUCC argues, however, that it should not be required to seek a final decision from the ZBA, because such an effort would be futile. (*See, e.g.*, DE 103 at 23-24.)

In *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005), the Second Circuit observed that there are various exceptions to the finality rule that governs ripeness in land use cases. For instance, a property owner "will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile. That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.*

---

[4] As I say, I focus here on the claim for prospective injunctive relief. There remains a claim for damages based on the past alleged denial of AUCC's constitutional rights in the ZBA proceedings. *See infra.*

Here, AUCC argues that the futility exception should apply to relieve AUCC of the requirement of a final decision. AUCC alleges that the ZBA "process was a sham aimed at delaying and denying the application and bleeding plaintiffs, a non-profit, of precious funds." (Compl. ¶71.) That delay, says AUCC, was achieved by such means as allowing members of the public to ask endless questions at the hearings so as to waste time and require more hearings to be scheduled. (*Id.* ¶¶81-82.) Moreover, during the course of the hearings, the ZBA members "expressed outright hostility towards the Plaintiffs, and indicated that they had pre-judged the application before it was complete." (*Id.* ¶207.) "Members of the [ZBA] made several comments indicating that there was no legitimate consideration of the application, and the hearings were a charade that would simply end in denial if the Plaintiffs could not be bled of their funds first." (*Id.* ¶208.)

AUCC alleges, then, that further proceedings before the ZBA would be futile because all indications are that the ZBA will not treat AUCC fairly. As signifiers of that unfairness, AUCC cites the alleged discriminatory treatment that its application received from the ZBA, as well as the delay tactics and requests for additional escrow funds. The intention, says AUCC, was to prevent its Islamic community center from ever opening. Thus, AUCC argues, the lack of a final decision from the ZBA does not render claims based on the discriminatory use of the application process unripe. Rather, "the issuance of a final decision being held in abeyance is the very essence of the claims." *Garden State Islamic Ctr. v. City of Vineland*, 358 F. Supp. 3d 377, 382 (D.N.J. 2018) (RLUIPA claims based on city's denial of certificate of occupancy for mosque were for ripe for adjudication, even though final decision on merits of mosque's water flow and sewage permit had not been made, because process was used to prevent mosque from permanently opening).

Were it not for the passage of the Ordinance, I might be inclined to agree with AUCC on the ripeness issue. That Ordinance, however, presents an additional wrinkle not present in the cited case law. This is not merely a case of

13

waiting in vain for the ZBA to change its mind. Rather, the Township seems to have stepped in and taken back responsibility from the ZBA; it passed the Ordinance, which changed the regulatory environment in a manner facially favorable to AUCC's application. Pursuant to the Ordinance, the property is now located in the Community Center Overlay district, where community center use is explicitly allowed. (DE 94, Ex. A.) It is thus more than possible that a renewed application to the Township could result in the issuance of a permit without any need to seek a use variance from the ZBA. AUCC has not alleged facts sufficient to demonstrate that it would be futile to pursue this path, which could circumvent the ZBA entirely.

AUCC's frustration is palpable. It emphasizes in the amended complaint that it has been "going through this process for years with no end in sight." (Compl. ¶213.) Adding insult to injury, the ZBA has demanded that AUCC put up more money to fund its continued application process. (*Id.* ¶162.) The delay and AUCC's frustration, however, are hardly unique in the annals of local land use regulation, and the process does seem to be at least potentially moving ahead, on a revised legal basis.

AUCC has not demonstrated that withholding judicial review until AUCC applies for a permit under the Ordinance would impose sufficient hardship under the *Abbott Laboratories* ripeness test. In general, "[t]he burden of participating in further administrative and judicial proceedings does not constitute sufficient hardship for the purposes of ripeness." *NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 345–46 (3d Cir. 2001) (quotation omitted). As to the financial burden of the ZBA escrow, it appears from the record that an escrow account is not required in order to apply for a permit from the Township.

When it comes to ripeness, the critical question is "whether there might be a better time to hear the case down the road." *See Israelite Church of God in Jesus Christ, Inc. v. City of Hackensack*, No. CIV.A. 11-5960, 2012 WL 3284054, at *4 (D.N.J. Aug. 10, 2012). Through passage of the Ordinance, the

Township has in effect reasserted its primacy and relegated the ZBA to the back seat. To go forward on that basis, rather than attempting to dissect and correct the prior ZBA proceedings, seems by far the better course. AUCC's sweeping claims for injunctive relief, as presented, would require the Court to step into the shoes of the ZBA and grant all permits and approvals sought. A far superior time to hear such a case would be after the AUCC has applied anew to the Township under the Ordinance. Of course, it is still possible that the Township could deny certain parts of the application, requiring AUCC to involve the ZBA, but that possibility is precisely the point: AUCC's claims for injunctive relief rest upon the contingent future event of how the Township would respond to its renewed application.[5] It is at least plausible that the Township enacted the Ordinance, not to stymie AUCC's application, but to relieve the impasse before the ZBA. Until AUCC applies, we will not know how the new Ordinance affects its proposal. And it would make little sense for this Court to preemptively state that such an application must be granted irrespective of its content or its relation to these newly enacted standards.

The foregoing discussion has focused on the injunctive demand that the Court mandate approval of AUCC's application. AUCC's claims for compensatory and punitive damages based on the allegedly discriminatory actions of Township officials and the ZBA members, however, stand on a different footing. No final decision on the application is necessary with regard to those damages claims, which would not be extinguished even by an eventual grant of all necessary permits and approvals. *See Israelite Church*, 2012 WL 3284054, at *4 (RLUIPA claim for monetary damages based on zoning board's delay in granting church's variance application was ripe even though variance was eventually granted). Even if AUCC is eventually permitted to develop the

---

[5]      Far from on point, but suggestive, is a recent Third Circuit decision, *Adorers of the Blood of Christ v. Federal Energy Regulatory Commission*, No. 21-2898, 2022 WL 16754137, at *10 (3d Cir. Nov. 8, 2022) (religious group's claim against gas pipeline company became ripe once federal agency tasked with issuing certificates to build pipelines granted such a certificate to defendant). That case involved, *inter alia,* doctrines of federal administrative law which do not apply here.

15

community center, it may still have a claim for damages incurred as a result of the alleged discrimination detailed in the amended complaint.

In sum, I conclude that AUCC's claims are moot insofar as they seek injunctive relief in the form of reversal of the ZBA's (non-)decision, and unripe given the still-unknown effect of the new Ordinance. The claims are justiciable, however, insofar as they seek compensatory and punitive damages for the discrimination AUCC has already allegedly suffered during the application process.

### B. Failure to state a claim

I turn to the motions to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim in accordance with federal pleading standards. The motions will be granted, but only on the basis of the need to amend the complaint to clarify which allegations and claims are asserted against which defendants.

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quotation omitted). This rule "guard[s] against vague and ambiguous complaints that impede either the defendants' receipt of adequate notice of the claims asserted against them or their ability to form a responsive pleading." *Parker v. Learn the Skills Corp.,* No. 03-6936, 2004 WL 2384993, at *1 (E.D. Pa. Oct. 25, 2004), citing *Schaedler v. Reading Eagle Publications, Inc.,* 370 F.2d 795, 798 (3d Cir. 1967). If a complaint fails to meet the pleading standard set by Rule 8(a), it may be challenged by a Rule 12(b)(6) motion to dismiss.

"A complaint that contains 'impermissibly vague group pleading' will be dismissed." *8 Erie St. JC LLC v. City of Jersey City*, No. 19-CV-9351, 2020 WL 2611540, at *3 (D.N.J. May 21, 2020) (quoting *Falat v. County of Hunterdon*, No. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013)). Mere conclusory

allegations against defendants as a group are insufficient; "a plaintiff cannot refer to all defendants 'who occupied different positions and presumably had distinct roles in the alleged misconduct' without specifying which defendants engaged in what wrongful conduct.'" *8 Erie St., supra* (quoting *Falat, supra*).

Here, although AUCC does allege certain actions that were taken by individual defendants, it refers to "the Defendants" as a group fairly frequently. For instance, AUCC alleges that "the Defendants" waived numerous zoning requirements to allow various secular projects to be developed while "Defendants sought to impose . . . novel and ridiculous interpretations for setback, parking, and other issues for the Islamic Center." (Compl. ¶136.) As another example, AUCC alleges that "the Defendants" have refused to grant it a temporary certificate of occupancy (*Id.* ¶119), and that "the Defendants" denied its request to build an ADA-compliant ramp and a round-about for safe daycare drop-off. (*Id.* ¶142.)

While "[i]t may at times be appropriate and convenient for a pleading to use the short-hand term 'Defendants,'" it is impermissible to do so where, as here, a complaint names 14 separate defendants (exclusive of John Doe defendants), who occupied different positions and had distinct roles in the alleged misconduct. *Falat*, 2013 WL 1163751, at *3. In such circumstances, the plaintiffs "cannot merely state that '*Defendants* did *x*,'—they must specifically allege *which* Defendants engaged in what wrongful conduct." *See id.* Otherwise, the defendants and the court are left to guess.

Similarly, every one of the complaint's fourteen counts is asserted against the "Defendants" as a group. Given that each count incorporates by reference every allegation already made in the complaint (e.g., Compl. ¶278 ("Plaintiffs re-allege and incorporate herein by reference all paragraphs as if alleged herein.")), it is unclear not only which defendants AUCC seeks relief from on each count, but which factual allegations are intended to support each claim for relief.

"It is not the Court's job," or the defendants', for that matter, "to

17

laboriously search the Complaint for factual assertions that could, in theory, be used to support one legal claim or another." *Falat,* 2013 WL 1163751, at *3. Nor is it the responsibility of the defendants or the court to identify which claims are being raised against which defendants. The complaint must clearly spell out which legal claims are asserted against whom and which factual allegations support each of those claims. Without such specificity, the requirements of Fed. R. Civ. P. 8(a) are not met.

These are the kinds of pleading deficiencies that may often be easily remedied by amendment, and insistence on clarity at this early stage will reap benefits later on. Accordingly, I will dismiss the amended complaint without prejudice to the filing of a second amended complaint.

### III.    Conclusion

The motions to dismiss (DE 94, 95, 96, 97) are **GRANTED** and the amended complaint is dismissed in its entirety without prejudice. An appropriate order will issue.

Dated: November 15, 2022

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**