UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AL UMMAH COMMUNITY CENTER, AKA, AUCC FAMILY, EDUCATION AND FAITH CENTER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TEANECK, et al., <br><br> Defendants. | Civil Action No.: 2:20-CV-14181(KM)(ESK) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT TOWNSHIP OF TEANECK, DAN MELFI AND ADAM MYSZKA'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

Aymen A. Aboushi, Esq.
Joel S. Silberman, Esq.
The Aboushi Law Firm, PLLC
1441 Broadway, Fifth Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508

1

### Table of Contents

**Introduction** ........................................................................................................ 1

**Preliminary Statement** ...................................................................................... 1

**Statement of Facts** ............................................................................................. 2

**Standard of Review** ........................................................................................... 7

**Analysis** ............................................................................................................. 8

**I.** The Defendants improperly attach extraneous materials not relied upon or referenced in the Amended Complaint, and the Court must disregard same. ............................................................ 8

**II.** Defendants ignore the pleadings and the Court's Opinion so as to manufacture a frivolous argument regarding standing. .......................................................................................... 8

**III.** The SAC is clear that, notwithstanding the Ordinance, Plaintiff's will continue to suffer harm and a renewed application would be futile. ........................................................ 11

**IV.** The Court may not dismiss Count XIV of the SAC ........................................................ 11

**V.** The Court may not dismiss Counts XI and XII of the SAC on Defendants' previously rejected exhaustion grounds**.** ............................................................................................ 15

    **A.**  The Passage of the Ordinance Does Not Render Plaintiffs' Claims For injunctive relief Moot……………………………………………………………………………………...**E**

**rror! Bookmark not defined.**

    **B.**  The Enactment of the Ordinance Supports Plaintiffs' Aiding and Abetting Claims ... 18

**VI.** Defendants Teaneck, Melfi and Myszka's Request to Strike Must be Denied. ..................... 19

**VII.** A Title 59 Tort Claim Notice is not required for NJLAD claims of aiding and abetting……………………………………………………………………………………….20

**VIII.** Plaintiff's Second Amended Complaint alleges specific acts against zoning officers Dan Melfi and Adam Myszka, who directly interfered with Plaintiffs' substantive Due Process Rights. .................................................................................................................... 20

**IX.** Defendants Teaneck, Melfi and Myszka concede that Counts IV, V, VI, VII, VIII, IX, and X of Plaintiffs' Second Amended Complaint are properly asserted and may proceed. .................... 22

**X.** Any dismissals should be without prejudice. ........................................................ 24

**Conclusion** ................................................................................................................ 25

## **Table of Authorities**

### Cases

Burlington Coat Factory Sec. Litig., 114 F3d 1410, (3d Cir 1997)................................. 8

Connelly v Lane Const. Corp., 809 F3d 780, (3d Cir 2016)................................... 8

Fowler v UPMC Shadyside, 578 F3d 203,(3d Cir. 2009) ............................................. 7

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, (2000) ............... 17

Garden State Islamic Ctr. v. City of Vineland, 358 F. Supp. 3d 377, (D.N.J. 2018).................. 16

Hedges v. United States, 404 F.3d 744, (3d Cir. 2005) ................................................ 7

Hornstine v Twp. of Moorestown, 263 F Supp 2d 887, (D.N.J. 2003). ...................................... 20

In re Burlington Coat Factory Sec. Litig., 114 F3d 1410, 1426 (3d Cir 1997) ............................. 8

In re Milestone Sci. Sec. Litig., 103 F Supp 2d 425 (D.N.J. 2000)................................. 8

Israelite Church of God in Jesus Christ, Inc. v City of Hackensack, Civ. No. 11-5960 SRC,

    (DNJ Aug. 10, 2012)........................................................................7

Israelite Church of God in Jesus Christ, Inc. v City of Hackensack, Civ. No. 11-5960 SRC, 2012

    WL 3284054, at *4 (DNJ Aug. 10, 2012)................................................................7

Milestone Sci. Sec. Litig., 103 F Supp 2d 425 (D.N.J. 2000) ........................................ 8

Phillips v. Pennsylvania Higher Education Assistance Agency, 657 F.2d 554, (3d Cir. 1981), .. 16

Sheridan v NGK Metals Corp., 609 F3d 239, (3d Cir 2010)........................................... 8

United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, (1968).................. 17

### Statutes

501(c)(3) ......................................................................................... 2

F. R. C. P. 12(b)(1) and 12(b)(6) ................................................................. 1

Fed. R. Civ. P. 12(f), ........................................................................................................ 19

Municipal Zoning Ordinance Section 33-23(d)(3)(a) ..................................................... 4

NJSA § 10:5–12(e) ......................................................................................................... 20

Rule 12(b)(6) or 12(b)(1) ................................................................................................. 7

Toll Bros., 555 F.3d at 137 ............................................................................................ 16

<u>Regulations</u>

Teaneck Code 33-24.23 .................................................................................................. 22

## Introduction

Plaintiffs AL UMMAH COMMUNITY CENTER, aka AUCC FAMILY, EDUCATION AND FAITH CENTER, a New Jersey Non-Profit Corporation ("AUCC") and RAY OF SUNSHINE FOUNDATION INC., a New Jersey Non-Profit Corporation ("RSFI"), hereinafter collectively "Plaintiffs," submit this Brief in opposition to Defendants Township of Teaneck ("Teaneck" or "Township"), Dan Melfi ("Zoning Officer" or "Melfi"), and Adam Myszka's ("Assistant Zoning Officer" or "Myszka") Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to F. R. C. P. 12(b)(1) and 12(b)(6) dated December 8, 2022.

## Preliminary Statement

Plaintiffs and its founders have had an extensive history of providing care, education, and support for their communities, even prior to the creation of their non-profit organizations in 2018. Since the official approval of the two organizations in 2018, Plaintiffs have sought to establish the Al Ummah Islamic Community Center in the Township of Teaneck. Defendants Township, Melfi and Myszka have used the zoning process to unlawfully deny Plaintiffs the right to operate their Islamic community center for years, including forcing Plaintiffs to partake in their Zoning Board of Adjustments ("ZBA") process despite being under no obligation to do so, unlawfully delaying applications, imposing onerous standards, and demanding tens of thousands of dollars in fees. Plaintiffs' Second Amended Complaint ("SAC") and the record are replete with countless instances of blatant racism. A plain reading of the SAC peals back the veneer of legitimacy that the Defendants in this matter seek to project to cover their discriminatory and other unlawful conduct. Defendants make numerous frivolous and specious arguments that are based upon misrepresentations and a skewed record. Furthermore, Defendants, in yet another attempt to evade responsibility for their conduct, have passed an

1

ordinance that they claim renders Plaintiffs' claims moot, but instead impose additional retaliatory restrictions on Plaintiffs that, by design, does not affect any other religious or secular entities. Plaintiffs are entitled under the law to vigorously prosecute their well pled claims before this Court. The record requires that the Defendants' motion be denied.

**<u>Statement of Facts</u>**

Plaintiffs are a non-profit, 501(c)(3) tax exempt Religious Corporations with their principal place of business in Teaneck, NJ. <u>See</u> Second Am. Compl. ("SAC") ¶¶5, 6, 24, 25, 28, 68, 88, 109, 123, 125, 213, 214, 217. Plaintiffs are Islamic based organizations, whose mission includes operating an Islamic Center for its members to have religious services, congregations, prayers, as well as other amenities. <u>Id</u>. Defendants knew that the Plaintiffs were Muslim, and that the Muslim community would use the facility for their house of worship because Muslims were in support of the application, Muslims were running the organization, and Muslims in Muslim dress showed up to every application process. Ex. C at 50:18-51:5, 53:2-6, 55:5-6, 56:9-21. Plaintiffs bought the property located at 50 Oakdene Avenue, Teaneck, NJ 07666 (hereinafter the "Site"), which is a two-story building that was formerly a public school. SAC at ¶¶18-19. The Site consists of over 2.25 acres of land, with a stand-alone parking lot, and sits on a corner with three street exposures and one property line adjacent to the end of the site. SAC at ¶¶15-19. Once the public school was decommissioned, it was sold to the True Light Presbyterian Church, Inc. (hereinafter "the Church"), which used the Site for religious purposes, including congregation, instruction, and gatherings, such as community events and religious celebrations. SAC at ¶¶19-22. After years of occupancy, the Church sold the Site to Plaintiffs. SAC at ¶23.

Thereafter, Plaintiffs sought various approvals to the Site to turn it into an Islamic Community Center that included a daycare, and met with Teaneck Officials, including Defendant

Dan Melfi, a senior zoning officer employed by Defendant Teaneck, who holds considerable

sway and input regarding permits, approvals and variances. SAC at ¶¶11, 27-31. Plaintiffs were

questioned significantly regarding the proposed Islamic Center, and specifically, regarding its

religious use. SAC at ¶28. Plaintiffs were urged to use an acronym for the Center, rather than

referring to its full name, because the full Arabic name might cause problems for the project,

despite the translation simply meaning community. SAC at ¶¶31-35.

Plaintiffs continually met with town officials throughout and beyond 2018, each time

changing their plans at the behest of Teaneck officials in order to ensure swift and seamless

approvals. SAC at ¶¶32, 35. Defendant Melfi made numerous representations to Plaintiffs,

including that limiting the prayer space and downplaying other religious activities at the Site,

would ensure that the Plaintiffs would receive swift approvals. SAC at ¶¶32-35, 40. Specifically,

Defendant Melfi urged Plaintiffs to use an acronym for the Center, rather than the full name,

because the full name in Arabic might cause problems to the project with the Town, its residents,

and its officials. SAC at ¶35. Furthermore, Plaintiffs were made aware that Teaneck's swimming

clubs and local high school did not have a place to practice, and that adding a pool and pool

house would greatly aid the community, so Plaintiffs added a pool at the behest of Defendants at

considerable cost and expense. SAC at ¶¶36-39. In addition, the proposed plan contained 63

parking spaces, which Defendant Melfi assured Plaintiffs that it would be sufficient. SAC at

¶165. Another proposed request by Plaintiffs was for an American with Disabilities Act

("ADA") compliant ramp, an ADA-compliant elevator, and a roundabout driveway for the safety

of children being picked up/dropped off. SAC at ¶¶43, 53, 58-63, 136, 158, 183-184, 189. The

proposed roundabout driveway would be located 145 feet away from a roadway where 150 feet

if required. SAC at ¶135. Additionally, the Site was in the Public Zoning area, which by statute,

permits recreational facilities and its associated uses, and no variance or appeal to the Zoning Board of Adjustments (hereinafter the "ZBA") is required for an outright grant of the permits. SAC at ¶¶ 46-48, 80, 138, 139, 209, 252. Plaintiffs presented the revised plans to Defendants before formal submission was made at the permit office, and Defendants, including Melfi, assured Plaintiffs that the plans would be approved without any issues. SAC at ¶¶ 32, 34, 40.

Plaintiffs submitted their pre-approved plans for the proposed Islamic Center, which then became subject to public backlash, which were then swiftly rejected by Defendants Melfi and Teaneck, alleging a number of "deficiencies" to cover for the unlawful denial of permits issued by Defendant Teaneck through its highest zoning policy maker Dan Melfi, along with Assisting Zoning Officer Adam Myszka. SAC at ¶¶ 42, 49, 50, 84, 294. The first of Defendant Teaneck's unlawful denials of work permit was issued on August 29, 2019, citing the alleged lack of a proposed site plan and zoning chart with calculations as the basis for the denial of a permit for the ADA Ramp, citing Municipal Zoning Ordinance Section 33-23(d)(3)(a). SAC at ¶¶ 52-53. However, a review of that provision reveals that it is only applicable where there is, "[a] commencement of a use, or change of use, or the erection, construction, reconstruction, alteration, conversion or installation of a structure or building," which is clearly inapplicable to an application for an ADA compliant ramp. SAC at ¶54. Despite the foregoing, Plaintiffs amended their application and resubmitted its request for the work permit. SAC at ¶ 55. Defendant Teaneck's denied Plaintiffs' requests again on September 10, 2019, stating that zoning board approval was required, and that permits may not be issued on properties with outstanding violations. SAC at ¶ 56. However, by the Defendants' very zoning statutes, the Site was located in Public Lands Zone ("P Zone"), which did not require Zoning Board approval. SAC at ¶¶ 46-48, 80, 138, 139, 209, 252. Accordingly, because the Site was in the Public Zoning

area, by statute, no variance or appeal would be required for the issuance of the permits. Id. Notwithstanding the foregoing, the alleged violations barring the issuance of the permits were nonexistent, and the only violations associated with the site were issued after Defendant Teaneck's denials. SAC at ¶¶ 73-75.

Upon information and belief, Defendant Myszka collaborated with Defendants Teaneck and Melfi to cover their tracks by issuing frivolous violations and manufactured a reason to deny Plaintiffs' permit applications. SAC at ¶¶ 75-77. Defendant Myszka issued summonses to the Plaintiffs for infractions after Plaintiffs applied for permits, so that there was a manufactured and false basis to refuse Plaintiffs' permits, which was evident by Defendant Teaneck and Melfi's refusal to approve Plaintiffs' application, in order to modify an existing fence that Defendant Myszka issued a violation for. Id. at ¶¶ 77-78. Plaintiffs were also ticketed for moving the playground a couple feet away from its original location despite the fact that there is no rule or regulation regarding the same.

Defendants Teaneck and Melfi's unlawful conduct did not end there, as they issued additional denials of work permits, including but not limited to, refusals dated October 2, 2019 and November 25, 2019, wherein the basis of their denials remains unclear, as they cited a number of Municipal Zoning Ordinance sections that did not apply to Plaintiffs because 1) the Site was located on a P Zone that does not require Zoning Board approval, and 2) the variances were already approved for a prior owner/occupant/use. SAC at ¶¶79-84. Amongst the alleged reasons for denial of a work permit were dimensional, density, and other bulk restrictions for a house of worship and/or for a day care. Which did not apply to Plaintiffs because of their P Zoning Class, and because the variances had been granted to its predecessors, which include a Church that was also used as a daycare. Id. See also SAC at ¶¶82. 132. In its denial of the ADA-

compliant ramp, Defendants claimed that the lot coverage number in the architect's plans were 57.1% but that the engineering plans listed the lot coverage at 57.2%, and that the .1% discrepancy was a basis to deny the permit for a property consisting of nearly two and a half acres. SAC at ¶¶184-185.

Defendants were adamant in their denials for Plaintiffs' requests for work permits and forced Plaintiffs to go before the Defendant ZBA. SAC at ¶¶84-85, 87, 101. The ZBA process was a sham aimed at delaying and denying the applications and bleeding Plaintiffs, a non-profit, of precious funds. SAC at ¶89. Despite being under no obligation to do so, an in an effort of appeasement, Plaintiffs applied to the ZBA as instructed. Id. The ZBA process was exposed as a farce, and the ZBA's alleged concerns were evidently discriminatory in nature, clearly aimed at discouraging prayer services and religious exercises. SAC at ¶¶87-264, generally.

On or about January 18, 2022, Defendant Township amended its zoning laws to impose additional rules, regulations and requirements upon Plaintiffs that did not previously exist. SAC at ¶ 265. Plaintiffs were originally in the public "P" zone when initially applying, but they now fall under a new "community overlay" zone that was newly created following the filing and partial litigation of Plaintiffs' claims. SAC at ¶ 266. The amendment to the zoning law is unlawful, unjust, reflects the unequal treatment of Plaintiffs, and it is clearly retaliatory in nature, as Defendants are seeking to impose new barriers for Plaintiffs to adhere to in hopes of gaining tens of thousands of more dollars in fees and expenses allegedly for administrative purposes. SAC at ¶¶267-269. The Ordinance now renders the Property per se illegal because the existing structure of the property does not comply with the new dimension, bulk and other requirements imposed by the Ordinance and thereby imposes a *defacto* requirement that the Plaintiffs re-apply to the ZBA. SAC at ¶¶ 270-272. The Ordinance does not obviate the need to go before the ZBA,

but rather, mandates that Plaintiffs to do so because the Township would be required to deny any application by Plaintiffs for being noncompliant with the zoning requirements and seek variance from the ZBA. SAC at ¶¶ 273-276. While the Defendants have generously cast the Ordinance to bypass the unlawful actions taken by the BOA and its members so that Plaintiffs do not need to further suffer through further discrimination and unlawful actions, the practical effect of the Ordinance is to mandate that Plaintiffs go right back to the ZBA for variances on the newly imposed restrictions. SAC at ¶¶ 277. For example, the Ordinance imposes new requirements as follows: maximum lot coverage of 60%, minimum parking spaces, and maximum building coverage. SAC at ¶278. The proposed Islamic Center's lot coverage is 84%. Id. As it exists now, the Islamic Center does not comply with the imposed lot coverage and its mere existence now requires it to go to the Defendant BOA because of the Ordinance. Id.

### Standard of Review

"In deciding a Rule 12(b)(6) or 12(b)(1) motion to dismiss, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v UPMC Shadyside, 578 F3d 203, 210 (3d Cir. 2009)(citations and quotations omitted). On a motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." Israelite Church of God in Jesus Christ, Inc. v City of Hackensack, Civ. No. 11-5960 SRC, 2012 WL 3284054, at *4 (DNJ Aug. 10, 2012)(citing Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, state a claim to relief that is plausible on its face. Connelly v Lane Const. Corp., 809 F3d 780, 786 (3d Cir 2016). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. <u>Sheridan v NGK Metals Corp.</u>, 609 F3d 239, 262 (3d Cir 2010).

<div align="center">

**Analysis[1]**
</div>

### I.   The Defendants improperly attach extraneous materials not relied upon or referenced in the Amended Complaint, and the Court must disregard same.

A court may not consider anything beyond the four corners of the complaint on a motion to dismiss. A District Court considering a motion to dismiss for failure to state a claim generally may not consider any material beyond the pleadings. <u>In re Milestone Sci. Sec. Litig.</u>, 103 F Supp 2d 425 (D.N.J. 2000). The Third Circuit has held, however, that courts may consider any "document integral to or explicitly relied upon in the complaint." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F3d 1410, 1426 (3d Cir 1997). As such, Defendants' extraneous materials must not be considered by the court.

### II.   Defendants ignore the pleadings and the Court's Opinion so as to manufacture a frivolous argument regarding standing.

The Court succinctly decided this issue. The Court held that AUCC has properly pled that the application process before the Defendants was futile. The Court was clear that Plaintiffs may pursue their compensatory and punitive damages re same. The Court left the question open as to whether the application process post-amendment of the ordinance would similarly be futile. The SAC makes it clear that any subsequent application will be futile.

Plaintiffs were originally in the public "P" zone when initially applying, but they now fall under a new "community overlay" zone that was newly created following the filing and partial

---

[1] Plaintiffs incorporate by way of reference all of the arguments made in Plaintiffs' concurrent briefs in opposition to Defendant ZBA, Defendants ZBA Members, Defendant Rehman and Defendant Meyer's motions to dismiss.

litigation of Plaintiffs' claims. SAC at ¶ 266. The Ordinance now renders the Property per se illegal because the existing structure of the property does not comply with the new dimension, bulk and other requirements imposed by the Ordinance and thereby imposes a *defacto* requirement that the Plaintiffs re-apply to the ZBA. SAC at ¶¶ 270-272. The Ordinance does not obviate the need to go before the ZBA, but rather, mandates that Plaintiffs do so because the Township would be required to deny any application by Plaintiffs for being noncompliant with the zoning requirements and seek variance from the ZBA. SAC at ¶¶ 273-276. The proposed Islamic Center's lot coverage is 84%. SAC at ¶278. As it exists now, the Islamic Center does not comply with the imposed lot coverage and its mere existence now requires it to go to the Defendant ZBA because of the Ordinance. Id. By and through these allegations, Plaintiffs have aptly stated that the ordinance *does not* and *could not* result in circumvention of the ZBA process and would in fact *require* that Plaintiffs re-enter the sham that is the ZBA process, from the very beginning, which would subject Plaintiffs to continue to fund the application with no end in sight. Reapplying to the ZBA, which is substantially comprised of the same individuals who engaged in the unlawful conduct, would be futile.

Defendants Teaneck, Melfi and Myszka now attempt to misconstrue the District Court's decision in an attempt to fit the Court's decision into the same regurgitated arguments. Defendants seek to reargue the previously rejected argument that the Plaintiffs "withdrew" their application. In doing so, the Defendants ignore the well pled SAC that establishes that, not only did the Defendant formally deny Plaintiff' application, but that any further application would be met by the same manufactured roadblocks, unabashed discrimination, and futility visited upon Plaintiffs during the first time the Plaintiffs applied and were denied.

The Court was clear that Plaintiffs have asserted justiciable claims for the discrimination they allegedly suffered during the application process. Op. at p. 16. As the Court clearly held the claims regarding the initial application process, before the Ordinance was amended, clearly states the claim or ripeness as again asserted by the Defendants unavailing. The SAC makes clear that the Plaintiff did dutifully apply, spent years facing discrimination and unequal treatment, and then were denied. There was never a "withdrawal" of Plaintiffs' claims. In fact, Plaintiffs were forced to appear before the ZBA by Defendants Teaneck, Melfi and Myszka. SAC at ¶¶84-85, 87, 101. The ZBA process was a sham aimed at delaying and denying the applications and bleeding Plaintiffs, a non-profit, of precious funds. SAC at ¶89. Defendants ZBA and ZBA members gave Plaintiffs the run-around and encouraged members of the public to continue asking questions without limit or care for how long the questioning went on for, or whether or not the questions were duplicative and therefore a waste of time. SAC at ¶ 93. ZBA members made racist and xenophobic comments, including ZBA member Mulligan's comment that camels could be used for pickup and drop-off and would need to be considered for the application. SAC at p. 2, ¶ 150. ZBA Member Mulligan, when reminded that the site already had a daycare variance, stated in sum and substance that "that was a scam. Would you trust your kids with **THESE PEOPLE**?" SAC at p. 2, ¶¶ 152, 395. The ZBA treated Plaintiffs differently from other applicants. SAC at ¶¶ 97, 98, 115, 116, 141, 188, 232, 309, 357-375. Notably, when the COVID-19 pandemic started, there was a brief break between the in-person hearings and the commencement of virtual hearings, but Plaintiffs were not afforded an opportunity to be heard virtually. SAC at ¶ 200. After all of this, after the process was dragged out for years on end, Defendants ZBA and ZBA members worked as a unit to deny Plaintiffs' application. It is clear

10

that, based upon the facts alleged in the SAC, Defendants' regurgitated arguments regarding an alleged withdrawal must be rejected a second time.

### III.    The SAC is clear that, notwithstanding the Ordinance, Plaintiff's will continue to suffer harm and a renewed application would be futile.

The Ordinance does not take back control of the approval process from the ZBA Defendants. Instead, unlike prior to the amending of the Ordinance, the Ordinance now mandates that the Plaintiffs seek approvals where none were previously required. The New Ordinance imposes bulk and other restrictions upon AUCC that makes it per say out of compliance with the newly enacted standards, and thus requires that AUCC return to the ZBA for approvals. The SAC makes clear why such a process would be futile. The ZBA did not have a reason to impose any requirements upon AUCC the first time it denied Plaintiff's application. Yet it took it upon itself to impose numerous requirements, give Plaintiff's the run around, and infect the process with unequal and discriminatory treatment. Of course, the SAC make clear the many ways that the Plaintiffs were treated unlawfully before the ZBA and is now the reason why the Plaintiffs cannot be forced to go back to the ZBA Defendants for approvals and waivers. To be clear the Ordinance does not obviate the need for ZBA approval, but rather now imposes requirements that make AUCC non-conforming as it exists and now required ZBA approval. AUCC cannot yet again spend tens of thousands of dollars and go through years of endless discrimination before the ZBA without any end in sight.

### IV.    The Court may not dismiss Count XIV of the SAC

The Defendants erroneously argue that, because the Court held that injunctive relief is unavailable without a renewed application under the amended Ordinance, that the Plaintiffs may not allege at this time that Ordinance was retaliatory or aiding and abetting discrimination.

11

Defendants' wishful reading of the Ordinance and the Court's Opinion fails on its face. First, the ordinance had the effect of imposing requirements upon Plaintiffs that did not previously exist. This had the effect of mandating that the Plaintiffs go back before the ZBA Defendants when they were not previously required to. This now mandates that the Plaintiffs go back before the same discriminatory ZBA. Clearly amending the Ordinance was retaliatory and designed to aid and abet the unlawful conduct against Plaintiffs and keep them in the ZBA process.

Second, that the Ordinance was amended in the context of ongoing litigation and has the effect of (1) Making AUCC per se non-conforming, and (2) formally relegating AUCC to the ZBA process where it will face the very Defendants in this action who perpetrated unlawful discrimination upon Plaintiffs. The enactment of the targeted Ordinance reeks of retaliation and aiding and abetting discrimination. Indeed, the Defendants could have amended the Ordinance to make Plaintiffs per se legal and conforming. Defendants had in their possession all of the bulk and other dimensions of the Plaintiffs such that they could have approved Plaintiffs' plans. Instead, Defendants went the other way, making Plaintiff's assistance illegal as a matter of law and relegating them to the discriminatory ZBA process. If Defendants wanted to make it "easier" for Plaintiffs to gain approvals, they would right the wrongs of the Defendants and approve the plans of AUCC on their face. Instead, Defendants claim to be doing Plaintiffs a favor by mandating the ZBA process and hoping the very Defendants who discriminated against Plaintiffs will have an epiphany that would result in ceasing their unlawful conduct. The concept that the Defendant Teaneck had to relegate the ZBA "to the back seat" in this matter through an Ordinance that places the ZBA in the driver's seat is an untenable sleight of hand that fools no one. In both situations, the ZBA unlawfully remains in the driver's seat as it relates to Plaintiffs' application.

Plaintiffs have asserted that the Ordinance renders the Property per se illegal as it currently exists, even though it has remained unchanged since it was a school, simply because it does not comply with the new requirements imposed by the Ordinance. SAC at ¶ 270. While the Property was not in violation of any zoning rules, ordinance or regulation at the time the Plaintiffs acquired the Property, it is now non-compliant and in violation. Id. Even if the Plaintiffs were not seeking any change or variance whatsoever, Plaintiffs would still be required to seek a variance with the ZBA because the Property is no longer compliant as it stands. A review of the Ordinance reveals that there are now newly imposed dimension, bulk and other requirements for the Property that did not previously exist, thereby imposing a *defacto* requirement that Plaintiffs once again seek approval before the ZBA. SAC at ¶¶ 271-272. By and through these allegations, Plaintiffs have aptly stated that the ordinance *does not* and *could not* result in circumvention of the ZBA process and would in fact *require* that Plaintiffs re-enter the sham that is the ZBA process, from the very beginning, which would subject Plaintiffs to continue to fund the application with no end in sight – circling back, again, to the futility of seeking a final decision.

Next, that the Plaintiffs may have to yet again go through a discriminatory ZBA process as a function of the newly amended Ordinance in order to gain standing for injunctive relief, does not mean that the newly amended Ordinance was not retaliatory or designed to aid and abet the unlawful conduct of the Defendants. The Ordinance, if discovery reveals it to be retaliatory and done to aid and abet the unlawful treatment of Plaintiffs, will too be unlawful. As such, that Plaintiffs may have to comply with the newly amended Ordinance in order to achieve a portion of the relief it seeks does not make the Ordinance in and of itself unassailable.

Finally, the adoption of Ordinance No. 6993 does not render Plaintiffs' claims as moot, as Defendant Teaneck alleges. Rather, the adoption of the new Ordinance serves only to reinforce

13

Plaintiffs' claims of discrimination and is the basis of additional claims asserted by Plaintiffs as a result of the Township's direct actions[2], as it seeks to target Plaintiffs in a discriminatory and retaliatory manner by imposing additional restrictions on Plaintiffs. Defendant Teaneck continues its conduct of treating Plaintiffs unequally compared to other religious and secular entities. The language contained in the ordinance itself, which states, "the Township Council is desirous to correct and address certain provisions" that are "otherwise unnecessarily onerous or unnecessary with respect to community residences, family day care homes, and child-care centers, and/or are otherwise unnecessarily onerous..." shows that the passage of the ordinance was discriminatory and retaliatory in nature. In a situation where the Plaintiffs were under no obligation to be before the ZBA before the lawsuit, the Township made it law that the Plaintiffs, and solely Plaintiffs, have no choice and are now subject to previously inapplicable restrictions and must go before the ZBA to seek variations.

The District Court Opinion noted, and Defendants concede, that despite the passage of the Ordinance "it is still possible that the Township could deny certain parts of the application, requiring AUCC to involve the ZBA." Op. at p. 15; Teaneck Br. at pp. 16-17. It cannot be understated that the passage of the Ordinance now *requires* that any application to the Township be denied because Plaintiffs are now suddenly in violation of the newly imposed dimensional, density and bulk requirements when they were not in violation previously – it is not a mere possibility that Township would deny such an application. Plaintiffs would, once again, be subject to the futile, arbitrary, capricious and discriminatory process of seeking a variance with the ZBA. As such, Plaintiffs' claims are ripe and justiciable by the Court and Defendants' motion to dismiss must be denied.

---

[2] The acts of the Council constitute per se actions on behalf of the Teaneck as they are by law policy makers.

The passage of the Ordinance has the exact opposite effect of the one contemplated in the November 15, 2022 Opinion and subjects Plaintiffs, once again to the futile, arbitrary, capricious and discriminatory process of seeking a variance with the ZBA and the damages they experience will now be compounded through more delays and more fees. While an application for a permit from the Township does not require an escrow, the ZBA will undoubtedly require an escrow when it, once again, has to hear Plaintiffs' application because the Ordinance mandates that the Township deny Plaintiffs' application and requires Plaintiffs to appear before the ZBA.

**V.**      **The Court may not dismiss Counts XI and XII of the SAC on Defendants' previously rejected exhaustion grounds.**

In refusing to accept this Court's ruling, Defendants yet again erroneously argue that Plaintiffs have not met an exhaustion requirement and therefore cannot pursue claims under the Municipal Land Use Law. The SAC could not be clearer that the Plaintiffs submitted an application and that application was denied under clear instances of unequal treatment and discrimination. The SAC could also not be clearer that any future application would similarly be futile as the Plaintiffs would be relegated to the same ZBA who engaged in the discriminatory conduct complained of in the Complaint. While the Defendants seek to disregard the well pled SAC, they cannot disregard the Court's decision in which the Court stated it would tend to agree with the Plaintiff that the allegations in the Complaint would make any further exhaustion an exercise in futility.

Defendants' claim that "AUCC never completed its Site Plan Application before the ZBA . . ." is demonstrably false. Teaneck Br. at p. 23 (emphasis in the original). Indeed, the Court's opinion recognized that Plaintiffs' plan was submitted, went through years of manufactured road blocks and discrimination, and was ultimately denied. Defendants then go on to claim that there are no recognized exceptions to the exhaustion requirement, despite the Court's opinion tending

15

to agree with Plaintiffs' well pled complaint that establishes futility in any further exhaustion of remedies. The District Court Opinion did not hold that Plaintiffs' allegations were unripe due to failure to satisfy the finality requirement as Defendants propose, but agreed that, "the issuance of a final decision being held in abeyance is the very essence of the claims." Id. at p. 13, citing Garden State Islamic Ctr. v. City of Vineland, 358 F. Supp. 3d 377, 382 (D.N.J. 2018). The District Court noted that this allegation was compelling, if not for the passage of the Ordinance because "the Township seems to have stepped in and taken back responsibility from the ZBA." Plaintiffs' SAC demonstrates that this is not true, and that the passage of the Ordinance puts Plaintiffs precisely in the same predicament that they were in previously, and that the damages they experience will now be compounded through more delays and more fees. Simply put, if going before the ZBA and being subjected to years of discriminatory conduct tended to make any exhaustion of remedies futile, surely going back to the same board for further consideration of newly imposed requirements would meet the same definition and fate.

## A. **The Passage of the Ordinance Does Not Render Plaintiffs' Claims For injunctive relief Moot.**

The mootness doctrine is another approach to the question of whether an action is justiciable. Toll Bros., 555 F.3d at 137. A case is moot if: "(1) it can be said with assurance that 'there is no reasonable expectation …' that the alleged violation will recur, … and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Phillips v. Pennsylvania Higher Education Assistance Agency, 657 F.2d 554, 569 (3d Cir. 1981), cert. denied by 455 U.S. 924 (1982). This test of mootness is completely disregarded by Defendants, who do not assert mootness under any doctrine of law nor any case law, and instead rely solely on the District Court Opinion dated November 15, 2022, whose arguments do not reflect or

16

consider the remedying allegations set forth in Plaintiffs' SAC. Regardless, any assertion that Plaintiffs' claims are moot must be rejected under the aforementioned test.

As set forth above, Plaintiffs' claims are not moot under the first prong of the test because the violations alleged by Plaintiff will undoubtedly recur simply by the nature and actual application of the new Ordinance. Even if the Plaintiffs were not seeking any change or variance whatsoever, Plaintiffs would still be required to seek a variance with the ZBA because the Property is no longer compliant as it stands. A review of the Ordinance reveals that there are now newly imposed dimension, bulk and other requirements for the Property that did not previously exist, thereby imposing a *defacto* requirement that Plaintiffs once again seek approval before the ZBA. SAC at ¶¶ 271-272. By and through these allegations, Plaintiffs have aptly stated that the Ordinance fails to alleviate Plaintiffs' claims or render them moot, but in fact *requires* that Plaintiffs subject themselves to the very same circumstance under which the original alleged violation occurred.

Similarly, Plaintiffs' claims are not moot under the second prong of the test because the effects of the alleged violation remain applicable despite the passage of the Ordinance. The Ordinance requires that the Township deny any renewed application by the Plaintiffs and subject them once again to the ZBA. "The 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) citing United States v. Concentrated Phosphate Export Assn., Inc., 393 U.S. 199, 203 (1968). Defendants' arguments purposefully ignore the necessary result of the Ordinance – that Plaintiffs are now required to appear before the ZBA – in favor of relying on a facially-favorable event that is clearly targeted at Plaintiffs and discriminatory once actually applied. Defendants are

17

silent in the application of the Ordinance precisely because doing so would put Plaintiffs in the same position that they were in previously with no assurance that the same conduct will not recur. Plaintiffs would be subject to the same delays and exorbitant fees. Plaintiffs would still be unable to open their religious community center. Plaintiffs would still need a certificate of occupancy. Plaintiffs would still suffer a substantial burden in using the center to foster community, aid in its religious endeavors, and supporting the public through various recreational programs and facilities.

**B. <u>The Enactment of the Ordinance Supports Plaintiffs' Aiding and Abetting Claims</u>**

Finally, while the Court further opined that it is plausible that the Ordinance was enacted to assist Plaintiffs, it is also equally plausible that the ordinance was enacted as a form of retaliation and to aid and abet the unlawful conduct. Indeed, the ordinance now mandates that the Plaintiffs go before the very ZBA where they were not previously required to go. Furthermore, the newly enacted Ordinance makes AUCC patently non-conforming. In the context of a motion to dismiss, the Court must accept the SAC as true and provide all favorable inferences, including that the Ordinance was enacted in a retaliatory manner specifically to aid and abet the Defendants' defenses in this matter. Had the Defendants truly wished to assist Plaintiffs, they could have rezoned the property to approve it in totality, as opposed to imposing requirements that mandate Plaintiffs to go through a process that they previously engaged with. Any hint of altruism attributed to the Ordinance, in spite of the SAC, is removed by the stark reality that the Ordinance does not legalize AUCC, but rather makes it per se illegal and imposes new requirements that require AUCC to go back before the very board that this court "tended" to agree engaged in discrimination and rendered any exhaustion requirement before it by Plaintiffs futile. The SAC makes clear that neither the Court nor the parties need to speculate as to whether

submitting yet another application to the ZBA per the new Ordinance would yield a different result other than the discrimination visited upon the Plaintiff by the same Defendants.

## VI.    **Defendants Teaneck, Melfi and Myszka's Request to Strike Must be Denied.**

While Defendants Teaneck, Melfi and Myszka assert that portions of Plaintiffs' Second Amended Complaint must be struck, they provide no basis for their assertion. Instead, Defendants appear to rely on a misleading quote from the Opinion which did not rule that any allegations must be stricken. Absent any legal basis whatsoever, Defendants' request to strike based upon an Opinion written about a prior, pre-amendment complaint is unconscionably improper and should be denied outright.

Furthermore, while Defendants appear to be invoking Fed. R. Civ. P. 12(f), they fail to engage in a Rule 12(f) analysis or even cite the rule. Rule 12(f) grants the court discretion to "strike from a pleading an insufficient [ ] or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Traditionally, FRCP Rule 12(f) is applied to affirmative defenses. Because of the "drastic nature of the remedy," however, motions to strike are "usually viewed with disfavor" and "will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." Id. at 609. Defendants have not established any prejudice that they would suffer if their improper request to strike, nor could they. Without setting forth any legal basis for their request, the Defendants are essentially requesting that the Court completely disregard the standard for motions to dismiss, namely that the factual allegations set forth in the complaint be taken as true and construed in favor of the non-moving party. Similarly, Defendants do not allege that the allegations have no possible relation to the controversy, or that the allegations would confuse the issues. Instead, Defendants simply state that they are entitled to the

19

drastic remedy of striking portions of the SAC. This relief is patently improper without basis in the law and must be denied.

### VII.   A Title 59 Tort Claim Notice is not required for NJLAD claims of aiding and abetting.

Plaintiffs were not required to file a tort claim notice on its aiding and abetting claims. Plaintiffs' Aiding and Abetting claim is not made under tort law, but rather explicitly stated pursuant to the New Jersey Law Against Discriminating ("NJLAD").  NJLAD permits "aiding and abetting" claims, and makes it unlawful for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act. See NJSA § 10:5–12(e). Our Courts have long recognized that the Tort Claims Act is totally inapplicable to NJLAD. Hornstine v Twp. of Moorestown, 263 F Supp 2d 887, 898 (D.N.J. 2003). Given our Court's long-held precedent, Defendants' argument has no merit, and their motion must be denied.

### VIII.   Plaintiff's Second Amended Complaint alleges specific acts against zoning officers Dan Melfi and Adam Myszka, who directly interfered with Plaintiffs' substantive Due Process Rights.

The acts alleged in the Second Amended Complaint attributed to Defendants Melfi and Myszka, who were acting in their official capacities, demonstrates that claims for violations of Plaintiffs' rights are aptly pled. While Defendants Teaneck, Melfi and Myska harp on Plaintiffs' use of "Defendants" in the SAC, a closer review reveals that Melfi is explicitly referenced 194 times, Myszka is explicitly referenced 31 times, and Teaneck is explicitly referenced 133 times. The factual allegations against each of these Defendants are more than sufficiently clear and aptly pled.

Plaintiffs relied upon Defendant Melfi's guidance because Defendant Melfi was the ultimate decisionmaker and he possessed final authority in the approval of zoning related applications for Teaneck as their senior zoning officer. SAC at ¶¶11, 27-31. Defendant Melfi instructed Plaintiffs to use an acronym for the Center rather than the full name in order to minimize their Islamic background. SAC at ¶¶31-35. Defendant Melfi made numerous misrepresentations to Plaintiffs that their formal submission to the permit office would be approved without any issues. SAC at ¶¶ 32-35, 40. Defendants Teaneck and Melfi unequally applied the zoning laws and permit applications. SAC at ¶¶ 48-50. Defendant Melfi, as the highest zoning policy maker, denied Plaintiffs' request for work permits on several occasions, the first of which occurred on or about August 29, 2019, wherein the provision cited as the basis of the denial was inapplicable. SAC at ¶¶ 52-54. Defendant Melfi denied Plaintiffs' amended application citing the same code that they used to grant the Church's request while stating that the ramp was permitted as a right. SAC at ¶¶ 55-61. Despite passing all inspection and uses inside the Islamic Center, Defendants Teaneck and Melfi refused to temporarily permit Plaintiffs to use the center as they have permitted other religious and secular entities to do, thereby continuing to impose a double standard on Plaintiffs. SAC at ¶¶ 69-72.

Defendant Myszka is an official that is employed by Defendant Teaneck and issues summons on behalf of the Township. SAC at ¶ 12. Defendants Melfi and Myszka collaborated so that Myszka would issue summons to Plaintiffs for infractions *after* Plaintiffs applied for the permits so that there was a manufactured and false basis to refuse Plaintiffs' permits. SAC at ¶¶ 75-78. Defendant Teaneck, by and through its Senior Zoning Official Melfi, refused to approve Plaintiffs' application to modify an existing fence, then collaborated with Myszka to issue a violation for the very same fence. Id. Defendants Teaneck and Melfi continued to deny Plaintiffs' permit requests by falsely claiming that recreational facilities were not permitted in the P zone. In

fact, recreational facilities are permitted in the P zone as per statute. See Teaneck Code 33-24.23;
SAC at ¶ 80.

Defendants Teaneck, Melfi and Myszka's conduct directly interfered with Plaintiffs'
constitutionally protected right to exercise their religion on their property and prevented
Plaintiffs from opening their Islamic Community Center. Defendant Melfi's conduct was direct
and violated Plaintiffs' rights on many levels, including but not limited to, Plaintiffs' access to
their sanctuary, house of worship, and their ability to provide same to other members of the
community. Furthermore, Defendant Melfi's refusal to issue the work permits forced Plaintiffs to
participate in the ZBA process, where Plaintiffs were forced to pay tens of thousands of dollars
for ZBA appointed experts. Defendant Myszka issued frivolous violations and summonses to
manufacture reasons for Teaneck and Melfi to deny Plaintiffs' applications.

In the context of a motion to dismiss, the Court must accept the allegations made in the
Second Amended Complaint as true, in the light most favorable to Plaintiffs. Plaintiffs have
alleged in their SAC that Defendants Melfi and Myszka were acting in their official capacities
(SAC at ¶¶ 11, 12), alleged individual acts taken by each (SAC at ¶¶ 24-86), and alleged that
their actions were taken with actual knowledge and acquiescence of the discriminatory conduct
alleged (id.). As such, Plaintiffs' claims against Defendants Melfi and Myszka are aptly pled, and
Defendants' motion must be dismissed.

IX.    **Defendants Teaneck, Melfi and Myszka concede that Counts IV, V, VI, VII,
       VIII, IX, and X of Plaintiffs' Second Amended Complaint are properly asserted
       and may proceed.**

Defendants Teaneck, Melfi and Myszka make no argument against Counts IV, V, VI,
VII, VIII, IX, and X of Plaintiffs' Second Amended Complaint, and as such concedes them.
Furthermore, Defendants do not claim, and nor can they, that the Plaintiffs' claims for conduct

22

that occurred prior to the passage of the amended ordinance are actionable as this Court has previously held. Plaintiffs' claims under NJLAD, claims regarding violations of their due process rights under the United States Constitution and free exercise of religion New Jersey Constitution must be allowed to proceed.

Plaintiffs' claims under the New Jersey Law Against Discrimination (Count IV) specifically names Defendants Teaneck, Melfi and Myszka for violating Plaintiffs' rights through their unlawful use of weaponizing the land use laws in a discriminatory manner specifically to inhibit the Islamic Center's existence, use and functions. SAC at ¶¶ 314, 315. The SAC also specifically alleges in Count V that Defendants Teaneck, Melfi and Myszka violated the New Jersey Civil Rights Act by denying Plaintiffs' applications for certificate of occupancy and acting under the color of law to interfere with Plaintiffs based upon their Islamic character. SAC at ¶ 317. Furthermore, Defendants Melfi and Teaneck were specifically alleged to have denied Plaintiffs' permit applications and forcing them to go before the ZBA while continually participating and colluding with the ZBA to engage in further discriminatory conduct aimed at frustrating and denying Plaintiffs' application. SAC at ¶ 317(D).

Under Count VI, Plaintiffs specifically allege that Defendants Teaneck, Melfi and Myszka denied Plaintiffs a full and fair hearing, certificate of occupancy, and variances in violation of the US Constitution and Plaintiffs' Due Process Rights. SAC at ¶ 322. The SAC goes on to further allege that Defendants Melfi and Teaneck specifically denied Plaintiffs' permit applications, and forced them to go before the ZBA, who they were colluding with to further discriminate against Plaintiffs. SAC at ¶ 325.

Defendants Teaneck, Melfi and Myszka were also specifically attributed with  violating the First and Fourteenth Amendments in Count VII by inhibiting Plaintiffs' right to free exercise

of religion, right to assembly, and substantive rights by inhibiting and prohibiting Plaintiffs from operating the Islamic Center through their weaponization of the Teaneck Code and their public positions. SAC at ¶¶ 329-332. These Defendants placed a substantial burden on Plaintiffs through their refusal to grant permits and imposing inapplicable requirements on them, and forcing them to go through the sham that is the ZBA process. SAC at ¶¶ 333-337. Similarly, Defendants Teaneck, Melfi and Myszka violated the New Jersey Constitution's free exercise of religion clause through these very acts as alleged in Count VIII. SAC at ¶¶ 346-350. Plaintiffs also allege that Defendants Teaneck, Melfi and Myszka violated the Fourteenth Amendment's Equal Protection clause in Count XI by intentionally treating Plaintiffs differently from other entities based on their religious belief. SAC at ¶¶ 357-360. Defendant Teaneck also rezoned the property while this litigation was pending to impose additional, previously not required requirements upon Plaintiffs and solely Plaintiffs. SAC at ¶¶ 361-363. Similarly, Defendants Teaneck, Melfi and Myszka violated the New Jersey Constitution's equal protection clause through these very acts as alleged in Count X. SAC at ¶¶ 368- 369.

Defendants do not address these allegations, and as such, concedes them. Plaintiffs' properly pled claims must be permitted to proceed.

## X.      Any dismissals should be without prejudice.

The Parties are in the midst of completing discovery. As the deposition of Defendants Rehman has established, further details are emerging regarding the unlawful conduct of the Defendants. Given that the Plaintiffs are at an informational disadvantage at this point, the Plaintiffs respectfully request that any dismissal be without prejudice to Plaintiffs seeking to amend the complaint to add on any dismissed Defendants as facts emerge.

## <u>Conclusion</u>

For all of the foregoing reasons, and for all of the reasons stated in Plaintiffs' briefs opposing Defendants Zoning Board of Adjustments, Members of the Zoning Board of Adjustments, Atif Rehman and Jan Meyer's motions to dismiss, Defendants' motions to dismiss must be dismissed in their entirety in favor of Plaintiffs.

Dated: March 23, 2023

<div style="margin-left:40%">

Respectfully submitted,
<u>s/ Aymen A. Aboushi</u>
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, Fifth Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508

<u>s/ Joel S. Silberman</u>
Joel S. Silberman, Esq.
Law Offices of Joel Silberman
26 Journal Square, #300
Jersey City, NJ 07306
Tel: (201) 420-1913
Fax: (201) 420-1914
*Attorneys for Plaintiffs*

</div>

25